490

John H. McEvers, of Stinson, Mag, Thomson, McEvers & Fizzell, all of Kansas City, Mo., for plaintiffs.

Sam M. Wear, U. S. Atty., and Earl A. Grimes, Asst. U. S. Atty., both of Kansas City, Mo., and M. P. Wolk, Sp. Asst. to Atty. Gen., for defendant.

REEVES, District Judge.

The same question is presented in each of the above cases. It must be determined by this decision whether the value of certain Voting Trust Certificates is less than the value of an equal number of underlying shares of Katz Drug Company, Kansas City, Missouri, a Delaware corporation; or, stated differently: What are in fact the respective values of certain Voting Trust Certificates? The facts are agreed upon, save only as to the factual question, whether common stock of the said Katz Drug Company represented by Voting Trust Certificates is of less value on the market than the free common stock of said company.

Heretofore certain stockholders of Katz Drug Company provided for a Voting Trust for the usual purpose of maintaining a stable and unchanging management and this was done for the reason that the common stock of said Company was listed on the Chicago Stock Exchange, and, in like manner, was traded in over-the-counter markets.

It was not a closed family corporation, although plaintiff Michael H. Katz and his brother and members of their respective families owned and held a considerable portion of the outstanding common stock.

By the Voting Trust Agreement the holders of Voting Trust Certificates were to receive regular dividends on the underlying stock. The Voting Trust Certificates were not listed nor did the evidence show that they were traded over the counter. However, a market had been established for the Voting Trust Certificates in the following ways:

In operating the business of the Katz Drug Company, an employee's Bonus Committee was formed for the benefit of certain employees who were granted a cash bonus from time to time. It was arranged for the purchase of shares of stock by such employees out of the bonus granted. A committee was formed whose duty it was to purchase common stock of the company upon the market. Such stock was transferred to the Voting Trust and then there was issued to the employee a Voting Trust

Certificate. The cost to the employee per share was that of the prevailing market and such additional costs as may have been incurred by the committee. The evidence indicated that the latter was nil.

Experience demonstrated that many employees thus favored by bonus grants, as in the case of other employes, from time to time terminated their employment. In such event they did not desire to hold or continue their ownership of the Voting Trust Certificates. Since there was no trading in such certificates over the counter, nor were they listed on the Chicago Stock Exchange, it became the concern of the management, the Katz Drug Company, to establish a market price for such certificates. After consulting brokers it was decided that such certificates should be purchased at a discount of 33⅓% off the regular market value of the common stock. This became the prevailing market price of such certificates. It probably was the only market available to the holders. When gifts of Voting Trust Certificates were made by the plaintiffs, as alleged in their several complaints, plaintiffs made a gift tax return predicated upon the then and only market value assigned to such securities. Gift taxes were paid upon such values and subsequently the Commissioner of Internal Revenue reached a determination that the fair value of such securities was the same as that of the underlying common stock and assessed a gift tax accordingly. Such assessment was paid in each case by the plaintiffs under protest and they now sue for recovery of such payments upon the theory that the same were erroneously and wrongfully assessed and collected.

Other facts, if they become pertinent, will be stated in the course of this memorandum opinion.

■ 1. Under the prevailing revenue laws at the time the gifts were made the tax was based upon the value of the property at the time the transfer was made. By appropriate regulations, duly promulgated, it was provided "that if the gift is made in property the value thereof at the date of the gift shall be considered the amount of the gift." Provision was then made for arriving at the value of property transferred as a gift, as follows:

"The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell."

Quite clearly the Voting Trust Certificates had the effect to depress the fair market value of the underlying stock. It was so testified by a competent and able banker and by several security brokers. Without exception, they fixed a depreciated value conformable to that established by the Bonus Committee of Katz Drug Company in acquiring certificates from employees who had terminated their employment. There was no countervailing proof. The testimony, therefore, not only preponderated in favor of the plaintiffs but it became conclusive as to the fair market value of the said Voting Certificates at the time they were transferred as gifts.

In the case of Spitzer v. Commissioner, 153 F.2d 967, the Court of Appeals, this Circuit, in an elaborate and exhaustive opinion, not only recognized the depressing effect on the value of stock thus held but cited approvingly many cases which upheld values reached in approximately the same way as in these cases. The plaintiffs paid a gift tax originally on the values properly determined and the Commissioner was without support on the facts in requiring them to pay a tax upon values equal to that of the free common stock. Clearly the plaintiffs are entitled to judgment as prayed in their several complaints.

■ 2. The theory of the defendant is that Katz Drug Company is a closed family corporation and that pertinent cases are those dealing with such corporations. Such were the facts in Spitzer v. Commissioner, supra [153 F.2d 968]. The court said in that case:

"There is no evidence of sales of stock in the Forest City Manufacturing Company."

Moreover, the court in that case found that the Commissioner had facts before him to sustain his determination of values. These cases differ widely from the Spitzer case. The common stock of Katz Drug

Company was listed on the Chicago Stock Exchange, where there was active dealing in the stock. Furthermore, the stock was extensively traded over the counter in Kansas City. These facts differentiate these cases from those relied upon by the defendant.

In view of the above, the plaintiffs should have judgment as prayed, and it will be so ordered.