## NEE v. KATZ (two cases).
### Nos. 13472, 13473.

Circuit Court of Appeals, Eighth Circuit.

Aug. 12, 1947.

Maurice P. Wolk, Sp. Asst. to the Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., A. F. Prescott, Sp. Asst. to the Atty. Gen., Sam W. Wear, U. S. Atty., and Earl A. Grimes, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for appellant.

John H. McEvers, of Kansas City, Mo. (Reece A. Gardner, G. Lee Burns, John M. Phillips, and Stinson, Mag, Thomson, McEvers & Fizzell, all of Kansas City, Mo., on the brief), for appellees.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

Michael H. Katz and Rose B. Katz, his wife, paid deficiency gift-tax assessments on their separate gifts to their children, and each brought an action against the Collector of Internal Revenue for a refund. On a trial of the actions without a jury, the District Court found for the taxpayers, and from the judgment entered in favor of each the Collector has appealed.

The gifts of both consisted of voting trust certificates issued on stock of the Katz Drug Company held by trustees under a voting trust agreement. There were two voting trusts involved, which had different expiration dates for their voting trust agreements. The voting trusts had been created by the taxpayers and the two other largest stockholders of the Katz Drug Company as a means of insuring continuity in the management and policy of the corporation.

The only reviewable question raised by the briefs is whether the trial court employed the proper criteria or process in determining the value of the voting trust

certificates for gift tax purposes. Cf. Powers v. Commissioner, 312 U.S. 259, 260, 61 S.Ct. 509, 85 L.Ed 817. The Collector contends that the court in arriving at its judgment did not give consideration to all the relevant factors of such value in the evidence. Unless, however, this can be clearly demonstrated from the record, the judgments must be affirmed, for it cannot be said that the value which the court found is not supported by the evidence.

The gifts of voting trust certificates in their effect were gifts of stock of the Katz Drug Company in equitable ownership, since each certificate represented an underlying share of stock deposited in the voting trust.

The stock itself was listed and actively traded in on the Chicago Stock Exchange and so had a definite and easily ascertainable market value. The voting trust certificates, however, were not a listed security, nor had they been the subject of commercial trading. While the right to acquire and dispose of them was an open one, the only transactions which had actually occurred in such voting trust certificates were between the Katz Drug Company (or technically its Employees' Stock Purchase Committee) and employees of the Company. These were in certificates of another but similar voting trust which the Company had caused to be set up so its employees might acquire an interest in the business. Some employees had purchased certificates in this trust on a wage-deduction plan. Of wider scope, the Company under its profit-sharing plan had distributed its bonuses to employees in these voting trust certificates. The cash amounts of the bonuses were turned over by the Company to the Employees' Stock Purchase Committee, and the Committee purchased stock on the market for the voting trust and issued certificates against the stock to the employees on the basis of its cost. The Company also sought to work out a plan to enable employees to dispose of their certificates when their employment ceased, if they wished to do so, and after advising with some security brokers on the question of value it adopted the policy of having the Committee pay such employees for their certificates a sum equal to 66⅔ per cent of the market price of the stock at the time.

The taxpayers had adopted this value basis for the voting trust certificates involved, in making their gift tax returns. The Commissioner of Internal Revenue rejected these values and made deficiency assessments against the taxpayers on the theory and basis that the trust certificates were worth as much as the stock itself of the corporation. The trial court held, and the evidence clearly warranted the holding, that the Commissioner had erred in putting a value on the certificates equal to that of free stock in the corporation. Cf. Spitzer v. Commissioner, 8 Cir., 153 F.2d 967, 972. The court then further found that the value which the taxpayers had made the basis of their gift tax returns was in fact the fair market value of the certificates.

There is nothing in the formal findings that demonstrates that the court failed to give consideration to all the relevant factors of value in the evidence. The Collector bases his contention, however, upon the statements in the court's memorandum opinion, Katz v. Nee, D.C.W.D.Mo., 68 F.Supp. 490, 491.

The court said in the opinion that the transactions between the Employees' Stock Purchase Committee and employees who desired to dispose of their certificates on leaving the Company's employ had established a market for the voting trust certificates and resulted in a prevailing market price, which constituted at the time of the taxpayers' gifts "the then and only market value assigned to such securities". The opinion also referred to the testimony of a banker and three security brokers, whom the taxpayers had called as witnesses, and further said: "Without exception, they fixed a depreciated value conformable to that established by the Bonus Committee of Katz Drug Company in acquiring certificates from employees who had terminated their employment. There was no countervailing proof. The testimony, therefore, not only preponderated in favor of the plaintiffs but it became conclusive as to the fair market value of the said Voting Certificates at the time they were transferred as gifts." Then, after pointing out that the

cases dealing with the valuing of securities of a closed corporation were not controlling because the Katz Drug Company was not such a corporation, the opinion concluded: "In view of the above, the plaintiffs should have judgment as prayed * * *."

From these statements in the opinion, it would appear, as the Collector contends, that the court in determining the value of the certificates did in fact limit its consideration to the circumstances of (1) the Employees' Stock Purchase Committee having offered to buy any voting trust certificates of employees leaving the Company's employ at 66⅔ per cent of the market price of the stock and such employees having sold for this amount, and (2) the expert witnesses having testified confirmingly that this amount was the fair market value of the voting trust certificates. These aspects of the evidence the court believed to be—in the language of its opinion—"conclusive as to the fair market value of the said Voting Certificates at the time they were transferred as gifts."

■ These matters could, of course, be relevant factors of consideration in appraising the value of the certificates, but they were not legally conclusive factors in the sense that they prevented or that they made unnecessary a consideration of anything else in the evidence. If the case had been tried to a jury, the court could not have directed a verdict on the basis of this evidence, nor would it have been entitled to instruct the jury that it should ignore everything else in the evidence which might otherwise have a bearing on the value of the certificates.

Under the Regulations, the value of property generally for gift tax purposes "is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell." Treasury Regulations 108, sec. 86.19(a). And in attempting to determine the value of property for which the Regulations do not prescribe specific factors of evaluation, "All relevant facts and elements of value as of the time of the gift should be considered". Id. These provisions are applicable to the present situation.

There had been, as has been indicated, no dealing in the voting trust certificates in an open market. The buying of certificates from departing employees on a policy basis which the Company had been advised and believed was fair and which the employees accepted in the circumstance of severing their relationship with the Company could not be said to be a free selling and buying, such as might of itself perhaps normally establish the fair market value of a security. And the testimony of the expert witnesses, though it purported to have taken into account the various aspects of investment value, was merely one of the relevant factors in the evidence for the court's consideration. Cf. Heiner v. Crosby, 3 Cir., 24 F.2d 191, 193; Kline v. Commissioner, 3 Cir., 130 F.2d 742, certiorari denied 317 U.S. 697, 63 S.Ct. 440, 87 L.Ed. 558. It could not be declared to be legally conclusive merely because no opposing experts were called by the Collector, in the sense that the court would not be required to consider and weigh any other factors in the evidence which might have a bearing directly or indirectly on the value of the certificates.

The length of time the voting trusts had to run; the power of the trustees to terminate the trusts earlier; the fact that Michael H. Katz was one of the trustees and that the particular trusts (as distinguished from the employees' trusts) were those of controlling stockholders intended to insure continuity of management and corporate policy; the financial condition of the corporation, its earning power and history of dividend payments; the requirement that stock dividends become part of the trust and only cash dividends be turned over by the trustees to certificate owners; the authority of the trustees to close the transfer books at any time and suspend transfers of certificates "for such reasonable period as the Voting Trustees may determine"; the provisions (though the trustees had never previously enforced them) that the trustees were entitled to reasonable compensation for their services, to employ counsel, to be reimbursed out of cash dividends for all claims and expenses they might incur, and to hold the underlying stock on the dissolution of the voting trust until they had received full reimbursement;

the unacceptability of the certificates generally as bank collateral, etc.—all these were relevant factors shown by the evidence.

We, of course, do not presume to suggest the weight to be given by the trial court to any of these factors. We merely hold that the parties were entitled to have all of them considered and to have a judgment rendered that had taken them into account. The court's memorandum opinion, as we have pointed out, indicates that this was not done.

It may be, as was observed in Commissioner v. McCann, 2 Cir., 146 F.2d 385, 386, in a similar situation, that after weighing all the relevant factors in the evidence the court may come to the same finding of value as before. If so, the Collector on the present record will have no further cause to complain. It cannot be held as a matter of law on the evidence before us that the voting trust certificates had a value not less than the market price of the stock, as contended by the Collector.

The judgments are reversed and the cases remanded to enable the District Court to consider the question of value in relation to all the factors in the evidence which might contribute to or detract from the value of the certificates. The court will be permitted to dispose of the matter on the present record or to allow the parties a new trial, as it may see fit.

Reversed and remanded.