## KATZ v. NEE, Collector of Internal Revenue (two cases).
### Nos. 3447, 3448.

District Court, W. D. Missouri, W. D.

Dec. 18, 1947.

John H. McEvers, of Stinson, Mag, Thomson, McEvers & Fizzell, Reece A. Gardner, and John M. Phillips, all of Kansas City, Mo., and John W. Reed, of Norman, Okl., for plaintiffs.

Samuel O. Clark, Jr., Asst. Atty. Gen., M. P. Wolk, Sp. Asst. Atty. Gen., and Sam M. Wear, U. S. Atty., and Earl A. Grimes, Asst. U. S. Atty., both of Kansas City, Mo., for defendant.

REEVES, District Judge.

This case was decided by memorandum opinion filed August 10, 1946, D.C., 68 F. Supp. 490. At that time findings of fact were made and conclusions of law were stated. An appeal was taken. The Circuit Court of Appeals, 8 Cir., 163 F.2d 256, reversed the case, not for retrial, but to extend an opportunity to the trial judge to say whether, in reaching his decision, he considered several factors mentioned in the evidence and in the opinion of the Circuit Court of Appeals. Apparently it was thought by the Circuit Court of Appeals that the decision was as narrowly confined as that of the trial court in Kline v. Commissioner of Internal Revenue, 3 Cir., 130 F.2d 742, where the trial judge rested his opinion entirely upon the testimony of two experts.

The entire case has been reviewed and the opinion of the Court of Appeals examined. The issue for decision was whether the fair value of specified voting trust certificates, supported by underlying common stock of Katz Drug Company, a corporation, was less than the value of the common stock supporting such certificates. It was a gift tax case. The taxpayers, or donors, had paid a gift tax upon the theory that the certificates were of less value, whereas the Commissioner determined that such voting trust certificates were of value equal to that of the underlying common stock.

As stated in the memorandum opinion filed by the district judge, before the gifts were made and approximately of the date when the trust was created, there being no market for such certificates, for the benefit and in the interest of the holders of such certificates, the trustees and the corporation undertook to determine and fix a fair

market value so as to facilitate the sale and transfer of such security by holders, who felt impelled or desired to dispose of such. After careful inquiry and consideration, and upon the advice of brokers and others experienced in respect of such securities, a discount of approximately 33⅓% from the value of the underlying common stock was fixed as a reasonable and fair value of such securities. The testimony then showed that such price had prevailed and that many transfers had been made conformable thereto. There was no compulsion in such sales and transfers.

In order to support the correctness of the value thus fixed, the plaintiffs, in the trial of these cases, brought a banker and several brokers to testify as to the reasonableness of such value. These witnesses were not expert witnesses in the usual sense, but were skilled witnesses. They were skilled because of their particular training and experience and they were competent to testify although such testimony involved an element of inference. 32 C.J. S., Evidence, § 472.

In Cropper v. Titanium Pigment Co., 8 Cir., 47 F.2d 1038, loc. cit. 1043, 98 A.L.R. 737, the Circuit Court of Appeals this Circuit discussed at length the effect of the consideration to be given to testimony precisely like the testimony of the expert or skilled witnesses in this case. Among other things, the court said:

" * * * a witness may be permitted to state a fact known to him because of his expert knowledge, even though his statement may involve a certain element of inference or may involve the ultimate fact to be determined by the jury. United States Smelting Co. v. Parry, 8 Cir., 166 F. 407, 410; Central Coal & Coke Co. v. Williams, 8 Cir., 173 F. 337, 339; Denver & H. G. R. Co. v. Reller, 9 Cir., 100 F. 738, 49 L.R.A. 77; Chicago, B. & Q. R. Co. v. Conway, 8 Cir., 29 F.2d 551; O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55, 59; Runkle v. United States, 10 Cir., 42 F.2d 804."

The opinion in United States Smelting Co. v. Parry, supra, was written by former Justice Van Devanter of the Supreme Court while a circuit judge. He said [166 F. 411]:

" 'The most important qualification of the general rule before stated is that which permits a witness possessed of special training, experience, or observation, in respect of the matter under investigation, to testify to his opinion when it will tend to aid the jury in reaching a correct conclusion; the true test being, not the total dependence of the jury upon such testimony, but their inability to judge for themselves as well as is the witness. A reference to adjudicated cases will show the extent of this qualification, its application in actual practice, and the discretion accorded to the trial judge in that regard. In Transportation Line v. Hope, 95 U.S. 297, 24 L.Ed. 477, there was called in question a ruling of the Circuit Court whereby a witness of large experience in towing vessels was permitted to testify that in his opinion it was not safe or prudent for a tugboat in Chesapeake Bay to tow three boats abreast, with a high wind; *that being the point to be decided by the jury.*' "

The trier of the fact may have been able to draw the identical inference, but these witnesses could justify such inference from practical experience and in such way as one unskilled could not. In propounding questions to these skilled witnesses counsel pointed out the inherent weaknesses of the voting trust certificates and such as would ordinarily depreciate their value; among others, there was cited the lack of negotiability and voting privilege. Mr. Allendoerfer, President of the First National Bank of Kansas City, and one of the trustees, testified that such certificates were not acceptable as collateral. He spoke from long experience and in that regard was a skilled witness. Mr. Allendoerfer was a factual witness to the effect that banks would not loan on such security whereas the banks would loan on the common stock underlying the voting trust certificates. Necessarily, this would depreciate their value and the trier of the fact could reach no other conclusion. Such trier was not accepting the advice of an expert but put together the fact that the securities in question were voting trust certificates and the further

fact that such voting trust certificates were not acceptable as collateral.

The testimony of brokers was to the effect that voting trust certificates were not acceptable to purchasers of stock for many reasons. Among others: the dividends accruing in favor of such certificates were subject to deduction for expenses of the trust; dealers in securities would be and were dubious or doubtful about the conditions of the trust, the time it would yet run; some dealers would object to denial of voting privileges and the qualifications of subscription rights in the event of a new issue of stock; it was too burdensome upon brokers to attempt to familiarize themselves with the conditions of the trust and to convey to prospective purchasers information concerning such conditions; to make such securities marketable would require, in addition to explanations, literature, prospectuses and matters of that kind; the further fact that under the voting trust agreement stock dividends went into the trust upon the same terms as the original certificates; and the power of the trustees, in the administration of the trust, to close the transfer books and suspend transfers of certificates. And there were many other matters, all of which were depressive as to values of the voting trust certificates.

It did not require the testimony of a skilled witness or an expert to advise the court of these depressive features. However, the experts testified from actual experience that in a practical way such certificates are not desirable in the market for all the reasons stated and many others not here enumerated.

All of the facts and all of the factors outlined by the Circuit Court of Appeals were mentioned in the memorandum opinion filed by the trial judge. After stating the facts with respect to the certificates, the trial judge said:

"Quite clearly the voting trust certificates had the effect to depress the fair market value of the underlying stock."

This was a conclusion warranted by all of the testimony and upon the facts assumed as true by the litigants in propounding questions to the skilled witnesses. After making this statement in the memorandum opinion, the trial judge said:

"It was so testified by a competent and able banker and by several security brokers."

The trial judge knowing of these statements said that while the court found upon all the facts in the case, the depressed value of the securities in question, he went further, and said that his conclusions were supported by the testimony of skilled witnesses.

In considering the proposed findings of fact and conclusions of law submitted by counsel on both sides, the following supplemental finding was specifically made by the trial judge:

"The Voting Trust Certificates mentioned in the pleadings and the evidence were at the time the several gifts were made of the value asserted by the donors (plaintiffs) and such values had been established by dealing in said certificates and were approximately 33⅓% less than that of the free common stock of said Katz Drug Company."

Counsel for the defendant had requested the court to give its proposal, as follows:

"The voting trust certificates which were the subject of gifts made by plaintiff on January 14, 1938, had a fair market value of $5.125 a share."

Similar requests were made with respect to the other gifts. These requests were denied, and the trial judge made the findings as above quoted independently of requests by the parties. The entire record has been reviewed and no conclusion can be reached different from that embodied in the decision reviewed by the Circuit Court of Appeals.

Specifically answering the inquiry of the Circuit Court of Appeals: All the factors mentioned by the Circuit Court of Appeals were carefully considered and weighed in reaching the conclusion stated in the memorandum opinion.