FRED A. BERZON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

GERTRUDE BERZON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8615-71, 8616-71.     Filed March 11, 1975.

*Murray Roth,* for the petitioners.
*Warren W. Dill* and *William D. Peltz,* for the respondent.

STERRETT, *Judge:* The respondent determined deficiencies in the Federal gift taxes of petitioners as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Fred A. Berzon | 8615–71 | 1965 | $4,757.58 |
| | | 1966 | 4,384.80 |
| | | 1967 | 5,170.17 |
| | | 1968 | 5,877.00 |
| Gertrude Berzon | 8616–71 | 1965 | 4,757.58 |
| | | 1966 | 4,384.80 |
| | | 1967 | 5,170.17 |
| | | 1968 | 5,877.00 |

The issues for decision are: (1) The valuation of the stock of the Simons Co., Inc., which was transferred to eight trusts during the years in issue; (2) whether each petitioner is entitled to a $3,000 exclusion under section 2503, I.R.C. 1954,[1] for transfers of the Simons Co., Inc., stock to each of eight trusts in each of the years in issue; and (3) whether certain $3,000 exclusions claimed under section 2503 by each petitioner with respect to transfers in trust of the Simons Co., Inc., stock in years prior to those in issue may be disregarded in determining the aggregate sum of taxable gifts made by each petitioner for computation of any gift tax due for each petitioner in the years under review.

---

[1] All statutory references herein are to the Internal Revenue Code of 1954, as applicable to the taxable years involved, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioners Fred A. Berzon and Gertrude Berzon maintained their legal residence in Purchase, N.Y., at the time of the filing of the petitions herein. Each petitioner filed Federal gift tax returns for the calendar years 1965, 1966, 1967, and 1968 with the district director of internal revenue at Manhattan, New York, N.Y. The transfers in question of the Simons Co., Inc., stock, including those in 1962, 1963, and 1964, were made by Fred A. Berzon. Gertrude Berzon, as the wife of Fred A. Berzon, consented for the calendar years 1962 through 1968, to have the gifts in question of the Simons Co., Inc., stock made by her husband treated as having been made one-half by her pursuant to the gift-splitting provisions of section 2513.

The Simons Co., Inc. (hereinafter Simons Co.), is in the business of distributing irregular hosiery and pantyhose. In 1958 Fred A. Berzon obtained controlling interest in and became president of Simons Co.[2] The stock of Simons Co. has never been traded publicly or offered to the public.

For the years 1962 through 1968, the officers and directors of Simons Co. were as follows:

|  | *Officers* | *Directors* |
|---|---|---|
| 1962–67 | Fred A. Berzon—president and treasurer | Fred A. Berzon |
|  | Joseph Berzon—vice president and secretary | Joseph Berzon |
|  |  | Harold Berzon |
| 1968 | Fred A. Berzon—president and treasurer | Fred A. Berzon |
|  | Harold Berzon—secretary | Harold Berzon |
|  |  | Philip Berzon |
|  |  | Norman Shuman |

On September 20, 1962, the stockholders (Fred A. Berzon, Joseph Berzon, Philip Berzon, Harold Berzon, and Norman Shuman) of Simons Co. entered into a stockholders' agreement of which the relevant provisions are as follows:

FIFTH: No Stockholder shall transfer, dispose of or encumber his shares of the stock of the Corporation, without the consent of the other stockholders, except as follows:

---

[2] The extent of this controlling interest was not stated. However, as of Jan. 1, 1962, Fred A. Berzon owned 1,020 out of the 1,720 shares of Simons Co. issued and outstanding stock.

(1) Any of the Stockholders may transfer all or part of his stock of the Corporation by gift to or for the benefit of himself, or any descendant, or any spouse of any descendant. In case of any such transfer, the transferee or transferees shall receive or hold the shares of stock subject to the terms of this agreement and there shall be no further transfer of such shares, except by gift between the individuals specified herein. Any stock transferred in trust for any beneficiary designated above (except insofar as the transferor may be the beneficiary) shall be redeemable by the Corporation, provided it has the necessary surplus, at any time after the date of this agreement and shall be paid for in cash. Any such stock not redeemed by the Corporation within ten (10) years from the date hereof shall be purchased by the Corporation from each trustee of such trusts, provided the Corporation shall have the necessary surplus and shall be paid for in ten (10) equal annual installments, together with four (4%) per cent interest with the right of prepayment without penalty. The purchase price to be paid by the Corporation in the event of either the redemption or purchase, as herein provided, shall be the price as specified hereinafter.

(2) No individual party hereto shall transfer or encumber his shares of the Corporation without the consent of the other individual parties, unless the Stockholder desiring to make the transfer or encumbrance (hereinafter referred to as "transferor") shall have first made the offer to sell hereinafter described and such offer shall not have been accepted:

(a) The offer shall be given * * * to the Corporation and to the other signatory stockholders hereto and shall consist of an offer to sell all the shares of the capital stock of the Corporation owned by the transferor, * * *

(b) * * * If such offer is not accepted by the Corporation, because of lack of adequate surplus, or for any other reason, the other Signatory Stockholders may, within sixty (60) days after the receipt of such offer at their option, purchase all the shares of the capital stock of the Corporation owned by the transferor. * * *

(c) The purchase price of the stock shall be fixed on the basis of either a certificate of agreed value or book value * * *

(d) The purchase price, as above specified, shall be paid in thirty-six (36) equal monthly installments, as evidenced by promissory notes, the first note payable within three (3) months after the closing of the purchase payable successively monthly thereafter. * * *

(3) If the offer to sell is neither accepted by the Corporation nor by the other signatory stockholders, the transferor may make a bona fide transfer or encumbrance to the prospective purchaser or lienor * * *

SIXTH: Upon the death of a Stockholder (hereinafter referred to as the "decedent"), all of the shares of stock of the Corporation owned by him shall be sold and purchased as follows:

(1) The Corporation shall purchase and the decedent's personal representative shall sell to the Corporation all such shares at the price set forth in Paragraph "FIFTH" herein, except that calculation of book value, if necessary, shall be as of the end of the month following the death. The method of payment shall also be the same [with an exception not herein relevant].
* * *

(3) If the Corporation shall not have sufficient surplus to permit it lawfully to purchase all such shares of capital stock, the obligation of the Corporation with respect to the shares which the Corporation shall be unable to purchase, shall be deemed assumed by the surviving signatory stockholders hereto.

SEVENTH: (1) So long as any part of the purchase price of the shares of the capital stock sold in accordance with this agreement remains unpaid, the Corporation shall not declare or pay dividends, * * *

* * *

TENTH: Each certificate of stock of the Corporation now or hereafter held or issued shall be endorsed with the following legend: "This Certificate is transferable only in compliance with the provisions of a stockholders' agreement, which is on file in the office of the Corporation."

ELEVENTH: This agreement shall terminate in the event of liquidation, bankruptcy, receivership or dissolution of the Corporation, or by the mutual consent, in writing, of all the parties hereto.

TWELFTH: No waiver of any provision of this agreement shall be binding, nor shall any provision of this agreement be modified, unless the same shall be in writing, subscribed by the parties hereto.

* * *

FOURTEENTH: This agreement shall be binding upon and shall inure to the benefit of the parties, their heirs, legal representatives and assigns.

On December 28, 1962, petitioners created five separate trusts, by means of one document, one each for the benefit of their son Harold Berzon, their daughter Gloria Shuman, both over 21 years old, and three of their grandchildren, Janie Susan Shuman, then age 11, Wendy Anne Shuman, then age 9, and Audrey Lynn Shuman, then age 6. On January 5, 1965, petitioners created three separate trusts, again by means of one document, one each for the benefit of three of their other grandchildren, Harold Michael Berzon, then age 13, Richard Allen Berzon, then age 12, and Lawrence Charles Berzon, then age 9. The two trust indentures creating the eight trusts were identical [3] except for the designation of the person who was to constitute the beneficiary of each trust and except for the number of shares of Simons Co. stock given to each beneficiary. The relevant provisions of one of the indentures are as follows:

TRUST AGREEMENT made this 5th day of January, 1965, by and between FRED BERZON and his wife, GERTRUDE BERZON, of Westerleigh Road, Purchase, New York, (hereinafter called the "Grantors") and FRED BERZON, of

---

[3] The above-mentioned trusts were identical except for the use of the word "direction" in the latter indenture in place of the word "discretion" in the earlier one in Article II which deals with the trustees' powers. The use of the word "direction" appears to be a typographical error. However, it is of no importance here since that clause is irrelevant to the question at hand.

Westerleigh Road, Purchase, New York, and HAROLD BERZON, of Westerleigh Road, Purchase, New York (hereinafter called the "Trustees").

\* \* \*

## ARTICLE I

### DISPOSITION OF INCOME AND PRINCIPAL

\* \* \*

It is the intent of the Grantors to create three (3) separate trusts to be administered, however, in the discretion of the Trustees in solido. All provisions herein contained shall apply to each such trust. The trusts shall be administered upon the following terms:

(A) The net income earned during the minority of any Beneficiary shall be accumulated and, except as otherwise provided in paragraph "(B)", shall be paid to such Beneficiary when he or she attains majority. The net income of any trust held for an adult beneficiary shall be paid to such beneficiary in convenient installments not less frequently than quarter annually.

(B) Notwithstanding the provisions of paragraph "(A)", the Trustees shall have the power, in their sole discretion, to apply so much of the income otherwise required to be accumulated as they may determine to the support or maintenance of the Beneficiary for whom such income is being accumulated.

(C) Upon the attainment of the age of twenty-one (21) years by any Beneficiary hereunder who is a minor, all principal and income other than any shares of stock of THE SIMONS CO., INC., shall be paid over and distributed to the Beneficiary, free and discharged of all trust.

(D) The trusts provided for hereunder shall terminate upon the happening of any one of the following events: (a) the redemption of the stock held by the respective trusts in THE SIMONS CO., INC., by such corporation, (b) the expiration of the period of twenty (20) years from the date of execution of this trust indenture, (c) the prior death of the beneficiary. Upon the termination of the respective trusts as herein provided, the entire trust estate, as it shall then exist, both principal and income, shall be paid over and distributed to the Beneficiary if he then be alive, free and discharged of all trust; if the Beneficiary shall be deceased, then such trust estate shall be paid over and distributed to the estate of such Beneficiary, free and discharged of all trust.

\* \* \*

## ARTICLE II

### TRUSTEES' POWERS

The Trustees are authorized in their absolute discretion, with respect to any trust property at any time held or acquired by them, to exercise the following powers:

(A) To sell or otherwise dispose of the same at such time, in such manner, for cash or on credit, and upon such terms and conditions, as they shall deem advisable;

(B) To hold all or any part uninvested for such periods of time as they shall deem advisable;

(C) To retain and continue to retain the same and to make such purchases or exchanges, all at such times, in such manner and upon such terms as they shall

deem advisable, and to invest in such bonds, preferred or common stocks, mortgages, interests in any kind of investment trust, or other evidences of rights, interests or obligations, secured or unsecured, or in such other property, real or personal, as they shall deem advisable, whether or not any investment shall produce income or be of a wasting asset nature, and without regard to any law concerning the investment of trust funds or to the amount which shall be invested in any one security or in any one kind of investment and even though all or substantially all of such investments may be in one or more common stocks or other equity securities; * * *

* * *

## ARTICLE III

### EXPRESS POWER

Anything to the contrary herein notwithstanding, the Trustees are hereby advised with respect to any shares of stock held by them in THE SIMONS CO., INC. for the trusts herein provided, that such shares of stock are subject to the terms and provisions of a stockholders' agreement made by and among THE SIMONS CO., INC. and the various stockholders thereof and said Trustees are hereby authorized and directed to comply with the terms and provisions of said stockholders' agreement.

* * *

## ARTICLE IV

### ADDITIONS TO TRUST FUND

The Grantors and any other person may from time to time, by will or written instrument inter vivos transfer additional property, real or personal, to the Trustees to be received by the Trustees with their consent and held under this Agreement, and the Trustees shall have authority to receive such additional property and to hold, manage and dispose of the same subject to all of the provisions set forth in this agreement, which shall then or thereafter be applicable to such property.

* * *

## ARTICLE IX

### NEW YORK LAWS TO APPLY

This Agreement has been executed and will be administered in the State of New York, and this Agreement shall be construed and regulated by, and all questions pertaining to its validity, construction, effect and administration shall be determined by, and in accordance with, the laws of the State of New York.

During the calendar years 1962 through 1968 Fred A. Berzon made the following gifts of Simons Co. stock to the aforementioned trusts on the following dates:

| | Dec. 28, 1962 | Jan. 4, 1963 | Jan. 3, 1964 | Jan. 5, 1965 | Jan. 4, 1966 | Jan. 4, 1967 | Jan. 4, 1968 |
|---|---|---|---|---|---|---|---|
| The Harold Berzon Trust | 60 | 60 | 60 | 15 | 10 | 10 | 10 |
| The Gloria Shuman Trust | 15 | 15 | 15 | 15 | 10 | 10 | 10 |
| The Janie Susan Shuman Trust | 15 | 15 | 15 | 15 | 10 | 10 | 10 |
| The Wendy Anne Shuman Trust | 15 | 15 | 15 | 15 | 10 | 10 | 10 |
| The Audrey Lynn Shuman Trust | 15 | 15 | 15 | 15 | 10 | 10 | 10 |
| The Harold Michael Berzon Trust | | | | 15 | 10 | 10 | 10 |
| The Richard Allen Berzon Trust | | | | 15 | 10 | 10 | 10 |
| The Lawrence Charles Berzon Trust | | | | 15 | 10 | 10 | 10 |

The corpus of each of the above-mentioned trusts always consisted exclusively of stock of Simons Co. No dividends were paid by Simons Co. for the period 1957 up to the time of the trial herein.

In 1963 or 1964, Simons Co. purchased the business of its principal competitor for a purchase price between $200,000 and $300,000. When Joseph Berzon died on December 10, 1967, Simons Co. purchased his 175 shares of stock pursuant to the aforementioned stockholders' agreement, the purchase price being paid over a 36-month period ending on March 1, 1971.

Simons Co. owned one-half of the building located in New York City at 335-339 Fifth Avenue in which its offices were located. The building was a five-story brick commercial building approximately 60 years old on a corner lot approximately $59 \times 95$ feet. There was a store on the ground floor and office space on the upper floors. In 1968 Simons Co. purchased the other half of the building from United Merchants & Manufacturers for $375,000.

For the purpose of determining an agreed-upon value per share for the Simons Co. stock each year under the aforementioned stockholders' agreement, the value attributed to Simons Co.'s one-half interest in the building located at 335-339 Fifth Avenue was increased by the arbitrary figure of $100,000 to bring that value more in line with what the property was deemed worth. An appraisal of the fair market value of this building was never obtained by Simons Co.

Simons Co.'s income statements for the years 1963 through 1967 are as follows:

| | 1963 | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|---|
| Net income from sales | $3,312,397.30 | $3,553,740.58 | $4,405,581.25 | $4,660,113.09 | $5,055,323.76 |
| Cost of goods sold | 2,728,282.36 | 2,747,510.55 | 3,534,234.24 | 3,696,920.34 | 3,938,119.36 |
| Gross profit on sales | 584,114.94 | 806,230.03 | 871,347.01 | 963,192.75 | 1,117,204.40 |
| Total deductions | 578,649.90 | 679,033.72 | 769,815.09 | 840,833.65 | 975,655.71 |
| Net profit before provision for Federal income tax | 5,465.04 | 127,196.31 | 101,531.92 | 122,359.10 | 141,548.69 |
| Net profit after Federal income tax | 2,712.99 | 68,996.31 | 57,431.92 | 70,859.10 | 78,448.69 |

Simons Co.'s end-of-year balance sheets for the years 1963 through 1967 are as follows:

| | 1963 | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|---|
| Current assets _____ | $766,679.84 | $870,253.50 | $1,054,829.98 | $1,280,393.28 | $1,483,607.12 |
| Other assets: | | | | | |
| Investments_____ | 12,000.00 | 37,500.00 | 37,500.00 | 25,500.00 | 25,000.00 |
| Cash value of life insurance _____ | 22,660.70 | 24,658.66 | 26,338.63 | 27,670.13 | 28,555.49 |
| Real estate (less reserve for depreciation) | 161,126.44 | 166,702.73 | 163,282.02 | 159,861.31 | 157,087.97 |
| Furniture and fixtures (less reserve for depreciation) _____ | 9,678.17 | 16,007.53 | 11,423.92 | 11,566.48 | 19,787.21 |
| Leasehold improvements ___ | --- | --- | 3,947.56 | 2,631.64 | 1,315.72 |
| Deposit _____ | 425.00 | 425.00 | 425.00 | 425.00 | 925.00 |
| Prepaid expenses_____ | 7,613.06 | 7,473.64 | 8,603.08 | 8,469.20 | 9,094.98 |
| Total assets _____ | 980,183.21 | 1,123,021.06 | 1,306,350.19 | 1,516,517.04 | 1,725,373.49 |
| Current liabilities_____ | 391,827.00 | 465,668.54 | 591,565.75 | 730,873.50 | 893,973.70 |
| Noncurrent liabilities ____ | --- | --- | --- | --- | 65,384.90 |
| Total liabilities_____ | 391,827.00 | 465,668.54 | 591,565.75 | 730,873.50 | 959,358.60 |
| Capital stock _____ | 68,800.00 | 68,800.00 | 68,800.00 | 68,800.00 | 61,800.00 |
| Surplus _____ | 519,556.21 | 588,552.52 | 645,984.44 | 716,843.54 | 704,214.89 |
| Total capital_____ | 588,356.21 | 657,352.52 | 714,784.44 | 785,643.54 | 766,014.89 |
| Total liabilities and capital _____ | 980,183.21 | 1,123,021.06 | 1,306,350.19 | 1,516,517.04 | 1,725,373.49 |

Simons Co.'s gross sales and total assets approximately doubled during the years 1957 through 1967.

Using the values per share as agreed upon each year under the aforementioned stockholders' agreement, petitioners reported the aforementioned transfers of Simons Co. stock by Fred A. Berzon in the years 1962 through 1968 as follows:

| Year of gift | Total shares transferred | Fair market value per share as reported | Total value as reported |
|---|---|---|---|
| 1962 | 120 | $385 | $46,200 |
| 1963 | 120 | 385 | 46,200 |
| 1964 | 120 | 400 | 48,000 |
| 1965 | 120 | 440 | 52,800 |
| 1966 | 80 | 490 | 39,200 |
| 1967 | 80 | 545 | 43,600 |
| 1968 | 80 | 625 | 50,000 |

In their gift tax returns for 1962 through 1964 and for 1965 through 1968 each petitioner claimed five and eight, respectively, annual exclusions of $3,000 each.

In his notices of deficiency to petitioners (dated October 5, 1971, in docket No. 8615-71 and September 27, 1971, in docket No. 8616-71), respondent disallowed the claimed annual exclusions for the years 1965 through 1968 upon his determination that the beneficiaries received future interests in property. The respondent also redetermined the fair market value of the stock of Simons Co., and hence the total amounts of gifts for the years 1965 through 1968, as follows:

| Year of gift | Fair market value as determined | Total gifts as determined |
|---|---|---|
| 1965 | $453 | $54,396 |
| 1966 | 522 | 41,760 |
| 1967 | 590 | 47,200 |
| 1968 | 678 | 54,240 |

The respondent determined that the gifts of Simons Co. stock by Fred A. Berzon in the years 1962 through 1964 were also gifts of future interests for which exclusions under section 2503 were not allowable and thus increased the aggregate sum of taxable gifts of each petitioner as of the beginning of the calendar year 1965 by $45,000, which is the amount of claimed annual exclusions of each petitioner for those years which he claims should have been disallowed.

OPINION

The first issue for decision requires our determination for gift tax purposes of the value of the stock of Simons Co. transferred by petitioner Fred A. Berzon to eight trusts during the years 1965 through 1968. In reporting the gifts of Simons Co. stock on their respective gift tax returns, petitioners valued the stock each year at the purchase price for the stock agreed upon yearly by the stockholders of Simons Co. in accordance with a stockholders' agreement. For purposes of determining this agreed-upon purchase price, the value attributed to the Simons Co.'s one-half interest in a building located at 335-339 Fifth Avenue was increased by the arbitrary figure of $100,000 to bring that value more in line with what the property was deemed worth.

The stockholders' agreement provides basically that, except for gifts of Simons Co. stock to or for the benefit of that stockholder

and any descendants or spouses of descendants of that stockholder, no stockholder shall transfer or encumber his stock without consent of the other stockholders unless he shall first have offered to sell at a price determined in accordance with the stockholders' agreement all his Simons Co. stock to the corporation and, if the corporation does not elect to purchase the offered stock, to the other stockholders. Upon the death of any stockholder, it was further agreed that the decedent's personal representative would sell and the corporation (or the other stockholders if the corporation did not have sufficient surplus to permit it lawfully to purchase) would purchase at the aforementioned price all of the deceased stockholders' Simons Co. stock. According to its terms, the stockholders' agreement was binding on the parties thereto, their heirs, legal representatives, and assigns, and notice of the agreement was to be printed on each certificate of stock. The terms of the stockholders' agreement could be modified or waived only by action of all the parties thereto. The stockholders' agreement would terminate in the event of liquidation, bankruptcy, receivership, or dissolution of the corporation, or by mutual consent of all the parties thereto.

Petitioners contend that the yearly agreed-upon value per share of stock determined in accordance with the aforementioned stockholders' agreement controls the value at which the gifts of stock in question must be reported for gift tax purposes. Respondent, on the other hand, argues that such agreed-upon value is not controlling and that the value reported by petitioners was understated due to Simons Co.'s arbitrary manner of valuing, without an appraisal, its one-half interest in a building located at 335-339 Fifth Avenue. In determining the value of the stock in question respondent contends that the fair market value of the above-mentioned building at or near the dates of the respective gifts, as determined from appraisals made by a qualified appraiser, must be taken into account.

Section 2512(a) provides for valuation of gifts as follows:

(a) If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.

The Code itself does not define the term "value" but the regulations (section 25.2512-1, Gift Tax Regs.) under section 2512 state that "The value of property is the price at which such property would change hands between a willing buyer and a

willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts." In particular, section 25.2512-2(a), Gift Tax Regs., states that the value of stocks is the fair market value per share on the date of the gift.

Petitioners contend that the value of the stock in question is determined solely by the yearly agreed-upon purchase price arrived at in accordance with the stockholders' agreement. This is so, they argue, because of the restrictions on transfer of that stock.

There have been a number of cases involving the valuation of stock subject to restrictions on transfer. See *Estate of Pearl Gibbons Reynolds*, 55 T.C. 172, 188-189 (1970), and cases cited therein. In the instant case any appeal lies to the Court of Appeals for the Second Circuit and thus we must consider that court's interpretation of the law in this area. *Jack E. Golsen*, 54 T.C. 742, 756-757 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971). Several early opinions of that court held in estate tax valuation cases that the fair market value of securities, which were restricted by a right of first refusal during life and by options held by the other stockholders to purchase the stock of a deceased shareholder at a price based on book value, was limited to the purchase price determined according to the agreements granting the rights of first refusal and options. *Lomb v. Sugden*, 82 F. 2d 166 (C.A. 2, 1936); *Wilson v. Bowers*, 57 F. 2d 682 (C.A. 2, 1932).

However, in *Commissioner v. McCann*, 146 F. 2d 385 (C.A. 2, 1944), reversing 2 T.C. 702 (1943), the Second Circuit discussed its two prior decisions and opted for a different rule of law in that case. *Commissioner v. McCann* involved the question of valuation of gifts of class B McCann-Erickson, Inc., stock which was restricted by that corporation's bylaws with the restrictions printed on the face of each stock certificate. No transfer of the stock was allowed there during life except with special permission of the board of directors. At termination of employment for any reason including death, the employee or his estate was required to sell and the corporation to buy all the employee's class B stock for book value. The court held that the restrictions placed on transfer of the stock did not limit its value for gift tax purposes solely to the book value of the stock and that other factors must be considered in determining the value of the stock.

We think the facts of *Commissioner v. McCann* are analogous to those of the instant case (right of first refusal during life and mandatory buy-sell agreement at death) and thus apply the rule of law expressed therein. This approach is consistent with other cases of this Court in this area, see *Estate of Pearl Gibbons Reynolds, supra* at 189-191, and cases cited therein, that the restrictions on transfer in question are only one factor to consider in determining the value of stock for gift tax purposes.

In determining the fair market value of the gifted Simons Co. stock there are a number of factors to consider. See, e.g., *Nee v. Katz,* 163 F. 2d 256, 258-259 (C.A. 8, 1947); *Commissioner v. McCann, supra* at 386; *Jacob S. Kamborian,* 56 T.C. 847, 867-868 (1971), affd. 469 F. 2d 219 (1972); *Estate of Pearl Gibbons Reynolds, supra* at 190-191, 196; *Trianon Hotel Co.,* 30 T.C. 156, 181 (1958); sec. 25.2512-2(f), Gift Tax Regs. However, the only pertinent facts contained in the record from which we can judge value are the terms of the restrictions on transfer themselves, including "retention" value of the stock, the valuation of the building at 335-339 Fifth Avenue by a qualified appraiser, and the income statements and balance sheets of Simons Co. which were attached to petitioners' gift tax returns.

We note here that Simons Co. stock has never been traded publicly or offered to the public nor were dividends paid for the period 1957 up to December 13, 1972. There is no indication in the record that any sales of Simons Co. stock were made during the years in issue other than the redemption of the stock of Joseph Berzon at his death pursuant to the stockholders' agreement. We have given careful consideration to all the evidence contained in the record. We are impressed by the adversary position of the parties that set the purchase price (agreed-upon value) in the stockholders' agreement. However, we are also impressed by the appraisal of the building by respondent's expert and by the amount actually paid by petitioner for the other one-half of the fee. Thus, we will temper the stockholders' agreement purchase price and make the following findings of fact with respect to the value of stock on the dates in issue:

| Date of gift | Value per share of Simons Co. stock |
|---|---|
| Jan. 5, 1965 | $444 |
| Jan. 4, 1966 | 500 |
| Jan. 4, 1967 | 560 |
| Jan. 4, 1968 | 642 |

The second issue for decision is whether petitioners are each entitled to eight $3,000 annual exclusions per year under section 2503 [4] in computing taxable gifts for transfers of Simons Co. stock to eight trusts during the years 1965 through 1968. Section 2503(b) provides for the exclusion of the first $3,000 of gifts to any person [5] during a calendar year. However, such exclusion applies only to gifts "other than gifts of future interests in property," or, in other words to present interests.

For gift tax purposes the term "future interest in property" refers to "any interest or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date." H. Rept. No. 708, 72d Cong., 1st Sess. (1932), 1939-1 (Part 2) C.B. 478; S. Rept. No. 665, 72d Cong., 1st Sess. (1932), 1939-1 (Part 2) C.B. 526. See also Commissioner v. Disston, 325 U.S. 442, 446 (1945), and sec. 25.2503-3(a), Gift Tax Regs. Section 25.2503-3(b), Gift Tax Regs., defines a "present interest in property" as "An unrestricted right to the immediate use, possession, or enjoyment of property or the income from property (such as a life estate or term certain)."

---

[4] SEC. 2503. TAXABLE GIFTS.

(b) EXCLUSIONS FROM GIFTS.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person.

(c) TRANSFER FOR THE BENEFIT OF MINOR.—No part of a gift to an individual who has not attained the age of 21 years on the date of such transfer shall be considered a gift of a future interest in property for purposes of subsection (b) if the property and the income therefrom—

(1) may be expended by, or for the benefit of, the donee before his attaining the age of 21 years, and

(2) will to the extent not so expended—

(A) pass to the donee on his attaining the age of 21 years, and

(B) in the event the donee dies before attaining the age of 21 years, be payable to the estate of the donee or as he may appoint under a general power of appointment as defined in section 2514(c).

[5] In the case of gifts made in trust, the beneficiary, not the trust or the trustee, is the "person" to whom the statute refers. Helvering v. Hutchings, 312 U.S. 393 (1941).

Therefore, the determination of the question at hand requires the inquiry of whether, at the date of each gift, the interest received by a beneficiary was a present or future interest. *Jacob W. Blasdel,* 58 T.C. 1014, 1017 (1972), affirmed per curiam 478 F. 2d 226 (C.A. 5, 1973). Petitioners have the burden to show that their claims to the annual exclusions fall within the rule of law allowing those exclusions. *Commissioner v. Disston, supra* at 449. In resolving the question at hand we must consider the provisions of the trust indentures involved and the surrounding circumstances in order to decide the case on its own particular facts. *Fondren v. Commissioner,* 324 U.S. 18, 21-22 (1945); *Jacob W. Blasdel, supra* at 1018.

The specific claims of petitioners with respect to what interests conveyed through the trusts to the beneficiaries constitute present interests are unclear. Apparently petitioners claim the full value of the gifts (both the income and corpora interests) as present interests available for the exclusion under section 2503. We note that our task is made no easier by the fact that petitioners do not cite any Code sections, regulations, or cases in an area fraught with judicial decisions.

It is well settled that a gift may be separated into its component parts, one of which may qualify as a present interest under section 2503(b). *Commissioner v. Disston, supra* at 447; *Fondren v. Commissioner, supra* at 21. We think it clear that as of the dates of the gifts, under paragraphs (C) and (D) of Article I of the trust indentures, the rights of all the beneficiaries herein to the distribution of the corpora of the trusts were deferred and thus their interests in the corpora of the trusts are future interests for which annual exclusions under the provisions of section 2503(b), apart from (c), are not available. *Fondren v. Commissioner, supra* at 20-21; *United States v. Pelzer,* 312 U.S. 399, 404 (1941).

Clearly the use, possession, or enjoyment of the corpus of each trust by any beneficiary was postponed until the happening of one of a number of future events of uncertain date (i.e., the redemption of the Simons Co. stock, the passing of 20 years from the date of execution of each trust indenture, the death of a beneficiary, or a minor's reaching age 21 if the Simons Co. stock placed in trust for him had been previously sold). Petitioners also cannot employ section 2503(c) in order to qualify the gifts of the principal interests in the Simons Co. stock as present interests

with respect to the minor beneficiaries since there is no provision in the trust indentures for the expenditures of any of the trusts' corpora for the benefit of any minor beneficiary before his attaining the age of 21 as required by section 2503(c)(1). *Commissioner v. Thebaut*, 361 F. 2d 428 (C.A. 5, 1966), affirming in part and reversing in part a Memorandum Opinion of this Court.

The question of whether the income interests qualify for the exclusion, or any part thereof, under section 2503(b) and (c) presents a more complex problem. It is clear that the two adult beneficiaries had the right to receive the income of their respective trusts at least quarterly under paragraph (A) of Article I of their trust indenture.

Under paragraphs (A), (B), (C), and (D) of Article I of the trust indentures, the minor beneficiaries were to have the income of their respective trusts accumulated until age 21. The trustees had the power to distribute the accumulated income for the support or maintenance of the beneficiary for whom the income was to be accumulated. Any undistributed accumulated income was to be distributed to the beneficiary upon his reaching the age of 21 and, if he died before age 21, the entire trust estate, including accumulated income, was to be paid to his estate. After reaching age 21, a beneficiary had the right to receive the income of his respective trust at least quarterly.

It is clear that, without use of section 2503(c), the income interest given to each minor beneficiary does not qualify as a present interest under section 2503(b). *Commissioner v. Disston, supra* at 448-449; *Fondren v. Commissioner, supra* at 21. However, it is also clear that under our decision in *Arlean I. Herr*, 35 T.C. 732 (1961), affd. 303 F. 2d 780 (C.A. 3, 1962), the minor beneficiaries' income interests up to age 21 in this case can and do meet the literal requirements of section 2503(c) and that under our decision in *Estate of David H. Levine*, 63 T.C. 136 (1974), the minor beneficiaries' rights to income after age 21 in this case can and do, in conjunction with their income interests prior to age 21 under section 2503(c), meet the literal requirements of section 2503(b). Since the rights to income of the eight beneficiaries come within the literal requirements of section 2503(b) and (c), respectively, we will assume, without deciding, that the gifts of the income interests were gifts of present interests. See *Commissioner v. Lowden*, 131 F. 2d 127, 128 (C.A.

7, 1942); *Andrew Geller*, 9 T.C. 484, 494 (1947), and compare *Jesse S. Phillips*, 12 T.C. 216, 223 (1949); *Leonard Rosen*, 48 T.C. 834, 846 (1967) (dictum), revd. 397 F. 2d 245 (C.A. 4, 1968); *Vogel v. United States*, 42 F. Supp. 103 (D. Mass. 1941).

A crucial inquiry involved in the issue at hand is whether the income interests herein are subject to valuation. "Since the statutory exclusion provided by Section 1003(b)(3) [the predecessor under the 1939 Code to section 2503(b)] applies to the first $3,000 of a gift to each beneficiary, it is axiomatic that the interests transferred must have a determinable value." *Fischer v. Commissioner*, 288 F. 2d 574, 577 (C.A. 3, 1961), affirming a Memorandum Opinion of this Court.

The question thus presented is whether the income interests in the Simons Co. stock transferred to the trusts in the years 1965 through 1968 can be valued. During the years in issue Simons Co. was a closely held family corporation, of which petitioner Fred A. Berzon was president and controlling stockholder. Simons Co. did not pay any dividends from and during 1957 until the time of the trial herein, and there is no evidence in the record to indicate that any dividends were paid prior to 1957. The stock of the Simons Co. has never been traded publicly or offered to the public.

Fred A. Berzon testified that, before making the first gifts of Simons Co. stock in trust in 1962, he expected the corporation to pay dividends and that only because of certain business needs for funds did it not do so. However, in light of the corporation's dividend history up to the time of each gift and the fact that it had already (by 1965) spent several hundred thousand dollars to buy out a competitor, we think such self-serving testimony is entitled to little weight. The testimony of petitioner Fred A. Berzon and that of his son-in-law indicates to us that Simons Co. was pursuing a program of expansion which resulted in an increased drain on cash in order to increase its inventory and to open a chain of retail stores. Simons Co.'s gross sales and total assets approximately doubled between the years 1957 and 1967. Such expansion obviously requires cash (or credit to some extent) and would restrict, practically speaking, the ability to pay dividends.

We realize that in the trust indentures the trustees, who were both stockholders in Simons Co., did have the power to sell the Simons Co. stock and to reinvest the proceeds in income-

producing property (as well as in non-income-producing property). However, there is no indication in the record that they intended to do so or that they would in fact reinvest in income-producing property. Moreover, the stockholders' agreement, to which the trust indentures are subservient, appears to prohibit any transfer, except by gift, of the Simons Co. stock by a donee of a stockholder. In such case, where the sole asset of the trust is Simons Co. stock, the power of the trustee (donee) to sell and reinvest would not be a factor to consider in valuing the income interest.

After considering the entire record, we conclude that, as of the time each gift of stock was made in the years 1965 through 1968, the income interests in question were insusceptible to valuation. Furthermore, we note that, insofar as the 1968 gift of stock is concerned, the stockholders' agreement prohibited the declaration of a dividend in the 36-month period (which apparently ended on March 1, 1971) during which the stock of Joseph Berzon was being paid for by the corporation.

We think the instant case is controlled by our decision in *Leonard Rosen, supra,* see also *Stark v. United States,* 345 F. Supp. 1263 (W.D. Mo. 1972), affirmed per curiam 477 F. 2d 131 (C.A. 8, 1973), certiorari denied 414 U.S. 975 (1973), and do not opt to follow the Fourth Circuit's reversal of our position in that case since, as previously noted, appeal in the instant case lies with the Second Circuit for which we have found no case on point decided by that circuit. In *Leonard Rosen, supra,* we held that gifted income interests in the stock of a corporation which was controlled by the donors and which had not paid any dividends were not reasonably susceptible to valuation. We further held that in such circumstances (i.e., where the income interests in fact have no value or value which is so uncertain as to be incapable of reasonable ascertainment), employment of the actuarial tables (not herein claimed by petitioners) may not be had to value such income interests since their use would produce a clearly erroneous valuation. No exclusion under section 2503 was therefore allowed in that case.

We are also alert to the fact that in *Rosen v. Commissioner,* 397 F. 2d 245, 248 (C.A. 4, 1968), the court there said "It is conceded that a valuable right to receive income has been donated." There is no such concession in the instant case. We disagree with the court's reliance in *Rosen v. Commissioner,*

*supra* at 247, on the power of the trustees to sell the gifted shares and reinvest the proceeds of any sale in income-producing property where there is no direction in the trust indenture or inclination shown on the part of the trustees to do so. In such cases the possibility itself that the trustees would sell the gifted stock and reinvest in income-producing property is so uncertain as to be incapable of being valued.

We also think that any indication in *Rosen v. Commissioner, supra* at 247, that the growth or appreciation potential of the stock itself gives value to an income interest for purposes of section 2503(b) misses the point. Granted the value of the Simons Co. stock may have increased each year and granted such appreciation in value, under the terms of the trust indentures herein, accrues ultimately to the benefit of each beneficiary, still the rights of the beneficiaries to such increase in value are not themselves present interests, and thus are irrelevant for purposes of section 2503(b). This is so because the appreciation in value cannot be reduced to possession, enjoyment, or use by the beneficiaries except upon the happening of some future event of uncertain date. Indeed the appreciation itself may vanish before the distribution date occurs.

We realize here that with respect to any minor beneficiary, except for Janie Susan Shuman, any appreciation [6] in value of the Simons Co. stock may be realized as income prior to his reaching age 21 and thus may be expendable for his benefit prior to age 21 *if* the Simons Co. stock is redeemed by Simons Co. on September 20, 1972. Thus, section 2503(c) may come into play. However, the stockholders' agreement states that Simons Co. will redeem any of its stock held in trust then only if it has adequate surplus. The short answer here is that it cannot be predicted whether the Simons Co. stock will appreciate in value or whether Simons Co. will then have a surplus enabling it to purchase and will then in fact purchase said stock. Because each minor's Simons Co. stock may still remain in trust after he has reached age 21 according to paragraph (C) of Article I of the trust indentures, we do not think section 2503(c) applies to allow an exclusion for possible appreciation in value of the Simons Co. stock. In other words it is not certain that the appreciation in value, if any, of the Simons Co. stock (i.e., the "property" in section 2503(c)) will necessarily

---

[6] Under the trust indentures the trustee had the authority to allocate any realized appreciation to trust income.

be converted to cash and paid over to a minor beneficiary upon his reaching age 21. See H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. A322 (1954); S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 479 (1954).

The third issue for decision is whether the $3,000 annual exclusions for the years 1962 through 1964 claimed by petitioners under the provisions of section 2503 for gifts in trust of Simons Co. stock under the terms of the aforementioned 1962 trust indenture may be disregarded in determining the aggregate sum of taxable gifts made by each petitioner for computation of his and her gift tax due during the years 1965 through 1968. It is well settled that exclusions under section 2503, which have been erroneously allowed in prior years, may be disregarded in determining the gift tax due in a year under review even though the statute of limitations for those prior years has run. *Commissioner v. Disston, supra* at 449. Based upon our above reasoning for the years 1965 through 1968, we think the claimed $3,000 annual exclusions for the years 1962 through 1964 were erroneously allowed and must be disregarded in determining the correct gift tax due for the years 1965 through 1968.

*Decisions will be entered under Rule 155.*

Reviewed by the Court.