JEAN T. SWETLAND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Swetland v. Commissioner
Docket No. 2655-76.
United States Tax Court
T.C. Memo 1978-47; 1978 Tax Ct. Memo LEXIS 468; 37 T.C.M. (CCH) 249; T.C.M. (RIA) 780047; January 31, 1978, Filed Ralph D. Kovanda, for the petitioner. Buckley D. Sowards, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioner's *469 gift tax liability as follows: Addition
to tax Period ending
Gift tax
(Sec. 6651(a)) [1]
December 31, 1972
$ 508.45
$25.42
March 31, 1973
1,839.48
0
The sole issue for decision is whether petitioner is entitled to four $3,000 annual exclusions under section 2503(b) for gifts she made in trust. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided at Hunting Valley, Ohio, at the time of filing the petition herein. She filed gift tax returns for the quarterly periods ending December 31, 1972, and March 31, 1973, with the Internal Revenue Service Center, *470 Cincinnati, Ohio. Petitioner, when she sold her home from a previous marriage, wanted her four children from that marriage to have the proceeds of $72,000. She was reluctant to hive three of them outright gifts, as one was still in college, one was living in a commune, and another was living in Italy. In order to treat the children equally and to permit the children to have the income from the property, but to protect the capital from dissipation, petitioner on September 20, 1972, created an irrevocable inter vivos trust, naming herself and her husband as trustees. The trust instrument provided that the corpus was to be divided into four equal trusts, one for the benefit of each of petitioner's four children from the previous marriage. The trustees were to pay the income from each trust at least annually to the beneficiary thereof and could, in their discretion, distribute all or part of the corpus of each trust only to such beneficiary. Upon the death of the beneficiary prior to the disposition of the corpus of the trust, the principal was to be distributed as the beneficiary by will appointed or, upon the failure of the beneficiary to validly exercise such power, to his or *471 her estate. Article IV of the trust instrument granted certain administrative powers to the trustees, including the following: (b) The Trustees may retain as an investment, without liability for depreciation in value, any securities, real estate or other property at any time hereafter acquired by them through gift, devise or bequest from the Grantor, JEAN THOMAS SWETLAND, or any other person, together with any additions to or substitutions for any of said securities received through any corporate or similar distribution in respect thereof, even though such property be of a kind not ordinarily deemed suitable for trust investment and notwithstanding that its retention may result in a large portion of the trust property being invested in assets of the same character or securities of a single corporation. The term "securities", wherever used in this instrument, shall include common and preferred stocks, contractual obligations of every kind, whether secured or unsecured, equitable interests in real or personal property, and intangible property of every description and howsoever evidenced. (c) The Trustees may invest and reinvest all or any part of the trust property, including *472 both principal and income, in such securities, real estate and other property as may be selected by them irrespective of any limitation prescribed by law or custom upon the investments of trustees and even though the trust property shall be invested entirely in common stocks or other equities; may sell, lease, exchange or otherwise dispose of all or any part of the trust property, at such prices, upon such terms and conditions and in such manner as the Trustees shall determine, including the right to lease, with or without options of purchase or renewal, for any term irrespective of the period of the trust, and may exercise, buy or sell rights of conversion or subscription. (d) The Trustees shall collect all income from the trust estates and may determine whether money or property coming into their possession shall be treated as principal or income and whether gains, losses, taxes, expenses and other disbursements shall be allocated to principal or income. The principal of the trusts was invested in mediumterm, interest-bearing marketable bonds, and all of the income from the trusts was distributed to the beneficiaries by the trustees. [3]
*473 Petitioner made equal cash gifts to the trusts aggregating $48,000 on December 21, 1972, $24,000 on January 2, 1973, and $430.28 on February 27, 1973. On her quarterly gift tax returns for the periods in question, she claimed annual exclusions totaling $12,000 each year. The Commissioner disallowed any such exclusion in respect of the foregoing gifts. OPINION The principal issue herein is whether the income interest of each of the four children qualifies for the annual exclusion under section 2503(b). [4] Respondent contends that petitioner's gifts in trust do not so qualify because of the provisions of the trust instrument allowing the trustees to invade principal, allocate receipts between principal and income, and make investments without regard to limitations prescribed by law or custom. *474 To the extent that respondent's position rests on the power of invasion given to the trustees, it can be summarily rejected. Respondent's regulations recognize that a current right to receive income is a "present interest" within the meaning of section 2503(b). See section 25.2503-3(b), Gift Tax Regs.; Fondren v. Commissioner,324 U.S. 18 (1945). And the statute specifically provides that-- Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded [in determining eligibility for the $3,000 annual exclusion] if no part of such interest will at any time pass to any other person. [Sec. 2503(b).] Respondent's own regulations (which, along with the statutory provision, he either overlooked or ignored) contain language which tracks the statutory language and give an example which fits the facts herein like a glove. See section 25.2503-3(c), and particularly Example 4. Nor does this case involve a situation where, because of the nature of the *475 trust corpus (either as initially constituted or contemplated), there is such a likelihood that little or no income will be generated that it would be inappropriate to apply the usual actuarial standard of valuation.[5]Berzon v. Commissioner,534 F. 2d 528 (2d Cir. 1976), affg. 63 T.C. 601 (1975); Stark v. United States,477 F. 2d 131 (8th Cir. 1973), affg. per curiam 345 F. Supp. 1263 (W.D. Mo. 1972); Fischer v. Commissioner,288 F. 2d 574 (3d Cir. 1961), affg. T.C. Memo. 1960-62. Compare Rosen v. Commissioner,397 F. 2d 245 (4th Cir. 1968), revg. 48 T.C. 834 (1967). In this context, Phillips v. Commissioner,12 T.C. 216 (1949), relied upon by respondent, is clearly distinguishable.
*476 We turn to the question whether the administrative provisions granting the trustees broad investment powers and the authority to allocate receipts between income and principal render the value of the present interests unascertainable. In Pettus v. Commissioner,54 T.C. 112 (1970), we held that income interests qualified for the exclusion despite the existence of similar powers. In that case, the terms of the trust laid down explicit standards under which the allocation to income or principal could be made. Here, at the time of the gifts and thereafter, Ohio law imposed similar, if not more stringent, restrictions on a trustee's power. Ohio Revised Code (Supp.), section 1339.51 (Page 1962), provides as follows: When an instrument creating an inter vivos or testamentary trust or testamentary estate grants discretion or authority to allocate or apportion receipts or disbursements to or between principal and income, unless it expressly otherwise provides [6], the exercise of such discretion or authority is governed by any established legal principles of trust accounting *477 which exist with respect to such allocation or apportionment under the law of this state. In the event of any bona fide doubt by the one exercising such discretion or authority as to the existence or applicability of any established legal principles of trust accounting under the law of this state with respect to the particular allocation or apportionment being made, any allocation or apportionment made in good faith and in accordance with generally accepted standards of trust accounting shall be binding on all persons having any interest in the trust or estate. * * * Where local law restricts the powers granted to a trustee, the annual exclusion is not disallowed. Mercantile Safe-Deposit and Trust Co. v. United States,311 F. Supp. 670 (D. Md. 1970); Martinez v. Commissioner,67 T.C. 60 (1976); Brown v. Commissioner,30 T.C. 831 (1958). *478 Cf. In re Estate of Toulmin,462 F. 2d 978 (6th Cir. 1972), affg. 326 F. Supp. 1028 (S.D. Ohio 1971). See Quatman v. Commissioner,54 T.C. 339, 344-346 (1970). As to the trustee's investment powers, which conceivably could be utilized to invest the trusts' corpora in nonproductive property, we held in Pettus that such powers are standard administrative provisions which do not render income interests incapable of valuation. We see no reason to reach a different conclusion on the facts herein. Absent language in the trust instrument or extrinsic evidence to indicate that such a standard administrative provision is likely to be used to restrict an income interest, we will not so interpret it. In re Estate of Toulmin,supra;Martinez v. Commissioner, supra.Berzon v. Commissioner,supra, and Fischer v. Commissioner,supra, on which respondent relies, turned on the existence of non-income-producing trust principal and are therefore distinguishable. Admittedly, Van Den Wymelenberg v. United States,397 F. 2d 443 (7th Cir. 1968), seems to support respondent's *479 position, but we note that that case did not involve restrictions such as exist under Ohio law and is therefore distinguishable. See In re Estate of Toulmin,supra;Pettus v. Commissioner,supra at 123. Cf. Gilmore v. Commissioner,213 F. 2d 520, 522 (6th Cir. 1954), revg. 20 T.C. 579, 584 (1953). In short, the mere theoretical possibility that administrative provisions may be used to make the trusts' corpora less productive than average is, in and of itself, no more sufficient to deny petitioner the right to use the usual actuarial standard of valuation than is the possibility that the trusts will be more productive sufficient to allow taxpayers to use a higher value. See Estate of Gooel v. Commissioner,68 T.C. 504 (1977). Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue.↩
2. The addition to tax for the period ending December 31, 1972, is obviously calculated solely with reference to the amount of the deficiency. The parties presented no evidence and made only passing reference on brief to this issue. In this context, we deem that the addition to tax depends upon our resolution of the gift tax issue. Cf. Fischer v. Commissioner, 50 T.C. 164, 177↩ (1968).
3. Respondent reserved an objection in the stipulation of facts, on the grounds of materiality and relevancy, to the factual data as to the investments of the trusts and to a schedule of distributions. We think the data as to investments may appropriately be considered at least to the extent that it is shown that the principal was not invested in non-income-producing property. As to the data respecting distributions, we think this also has a bearing on the case, at least to the extent of its negative implications, i.e., it shows that the income was in fact paid.↩
4. The oldest child, whose income interest would have the smallest value, was born on August 21, 1946. Under the actuarial tables in section 20.2031-10(f), Estate Tax Regs. (see section 25.2512-9(e), Gift Tax Regs.) the value of her interest is in excess of $10,000, so, if the income interests qualify, their values are in excess of the $3,000 annual exclusion. We note that, in respect of the quarter ending December 31, 1972, the $3,000 annual exclusion will first be offset by the outright cash gifts, aggregating $5,837, made by petitioner and which the respondent has allowed.↩
5. The cases involving non-income-producing trusts are a further reason for looking at how the original gifts of cash were invested by the trustees. See footnote 3, supra.↩ Otherwise, a simple device might be available for avoiding such cases, i.e, by an initial transfer of cash followed by a previously contemplated investment in nonproductive assets.
6. We note that the power of allocation given to the trustees herein does not contain the phrase "irrespective of any limitation prescribed by law or custom" contained in the clause relating to their investment powers. See p. 5, supra.↩