CHARLES H. O'REILLY, SR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ALMA M. O'REILLY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 16353-89, 16354-89.     Filed December 26, 1990.

*James F. McLeod* and *Vincent Tyndall,* for the petitioners.

*Michael L. Boman,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined the following deficiencies in petitioners' gift taxes:

| Petitioner | Year | Deficiency |
|---|---|---|
| Charles H. O'Reilly, Sr. | 1985 | $17,732 |
| | 1986 | 1,484 |
| Alma M. O'Reilly | 1985 | 16,280 |
| | 1986 | 993 |

The issue for decision is whether petitioners may use the actuarial tables of section 25.2512-5(f), Gift Tax Regs., to determine the value of their gifts in trust when the retained interest reflected a much lower income yield than the assumed 10-percent yield of the actuarial table.

All of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated herein by reference.

At the time of the filing of their petitions, petitioners, husband and wife, maintained their legal residence in Springfield, Missouri.

On May 2, 1985, petitioner Charles H. O'Reilly, Sr., entered into a trust agreement wherein the Boatmen's National Bank of Springfield (Boatmen) was appointed trustee. The trust agreement created two separate trusts, known as "Trust No. 1" (trust 1) and "Trust No. 2" (trust 2). Trust 1 terminated 3 years after its creation, and trust 2 terminated 4 years after its creation. On May 2, 1985, petitioner Charles H. O'Reilly, Sr., made a gift of 13 shares of common stock of O'Reilly Automotive, Inc. (O'Reilly), a closely held family corporation, to trust 1 and 7 shares to trust 2.

Also, on May 2, 1985, petitioner Alma M. O'Reilly entered into a trust agreement wherein Boatmen was appointed trustee and wherein three trusts known as "Trust No. 1" (trust 1), "Trust No. 2" (trust 2), and "Trust No. 3" (trust 3) were created. Trust 1 terminated 2 years after its creation; trust 2 terminated 3 years after its creation; and trust 3 terminated 4 years after its creation. Further, on May 2, 1985, petitioner Alma M. O'Reilly made a gift of 5 shares of common stock of O'Reilly to trust 1, 9 shares to trust 2, and 6 shares to trust 3.

Under the terms of each trust, the grantor retained the right to all the income until the termination of the trust, at which time the principal was to be delivered to the donees of the remainder interest, who were petitioners' children.

The terms of the trusts provided, in pertinent part:

## ARTICLE SEVENTH

With respect to each Trust hereunder, the Trustee shall have all powers given to Trustees by law, except to the extent exercise of such power would be contrary to the express terms of this instrument, and in addition, the Trustee shall have full power:

(A) To receive any property assigned, devised, bequeathed, transferred or delivered to the Trustee by the Grantor or any other person and retain such, without incurring any liability, as investments of a trust even though such property is not the kind of property the Trustee would purchase as a trust investment and even though to retain such property might violate sound diversification principles;

(B) To invest and reinvest all, or any part of the Trusts or proceeds from such Trusts which may at any time constitute the Trust Estate, in such common and preferred stocks, bonds, debentures, mortgages, deeds of trust, notes, common trust funds, mutual funds, mortgage participations, income or non-income producing real estate, or in such other securities, investment or property, including stocks and securities of the Trustee, its parent company or affiliates, if any, including fractional interests, as the Trustee may from time to time, determine suitable.

On May 2, 1985, each share of O'Reilly had a fair market value of $9,639, and petitioners' adjusted basis was $115 per share. A 100-for-1 stock split of O'Reilly stock occurred on July 25, 1985. For the period 1980 through 1989, inclusive, O'Reilly paid the following dividends to its shareholders:

| Year | Shares outstanding | Dividend per share |
|------|--------------------|--------------------|
| 1980 | 860.5 | $12.00 |
| 1981 | 858.0 | 13.00 |
| 1982 | 701.0 | 13.00 |
| 1983 | 657.0 | 13.00 |
| 1984 | 651.0 | 13.00 |
| 1985 | [1]62,500.0 | [1].13 |
| 1986 | 60,200.0 | .13 |
| 1987 | 60,274.0 | .15 |
| 1988 | 60,170.0 | .16 |
| 1989 | 60,792.0 | .18 |

Boatmen retained all the O'Reilly stock until the termination of the trusts, at which time it was distributed according to the terms of the trust agreements. In deciding to retain the stock rather than selling it and reinvesting in

---

[1]After the 100-for-1 stock split on July 25, 1985.

other assets, Boatmen considered the closely held nature of O'Reilly and the income tax consequences of a sale of the stock.

As of May 2, 1985, the following yields were available at Boatmen:

| Type of investment | Yield |
| --- | --- |
| Passbook savings | 5.00% |
| 60-day Certificate of Deposit | 7.75 |
| 5-year Certificate of Deposit | 10.00 |

As of May 2, 1985, the yields on U.S. Treasury Bills were as follows:

| Term | Yield |
| --- | --- |
| 13-week | 7.87% |
| 26-week | 8.11 |
| 52-week | 8.44 |

Petitioners timely filed gift tax returns, Forms 709, for the taxable years 1985 and 1986. Petitioners calculated the value of the retained income interest and the gift of the remainder interest by using table B, as set forth in section 25.2512-5(f), Gift Tax Regs. Respondent issued notices of deficiency to petitioners with respect to the gift tax liabilities for the years 1985 and 1986 in which he determined that the use of the table was inappropriate and that the value of the gifts should have been based on the full value of the stock at the time of the transfers to the trusts.

Respondent argues that it would be improper to use table B to determine the value of the retained income interest in the present case because the transfers were of stock in a closely held family business and the trustee never intended to exercise the powers to sell the stock and reinvest in higher income-producing property. Respondent therefore concludes that the donors' retained income interests are not susceptible of measurement on the basis of generally accepted valuation principles, with the result that the value of petitioners' retained interests is zero and the gift tax is applicable to the entire value of the property under sections 25.2511-1(e) and 25.2512-5(a), Gift Tax Regs. Petitioners counter by asserting that they properly used table B to value their retained income interests and the gifts of the remainders.

Section 25.2511-1(e), Gift Tax Regs., provides in part:

If a donor transfers by gift less than his entire interest in property, the gift tax is applicable to the interest transferred. * * * However, if donor's retained interest is not susceptible of measurement on the basis of generally accepted valuation principles, the gift tax is applicable to the entire value of the property subject to the gift. * * *

## Section 25.2512-5, Gift Tax Regs., provides in part:

Valuation of annuities, life estates, terms for years, remainders, and reversions transferred after November 30, 1983.

(a) *In general.* (1)(i) Except as otherwise provided in this paragraph (a)(1)(i), the fair market value of annuities, life estates, terms for years, remainders, and reversions transferred after November 30, 1983, is their present value determined under this section. * * * Where the donor transfers property in trust or otherwise and retains an interest therein, the value of the gift is the value of the property transferred less the value of the donor's retained interest.[2] * * *

*       *       *       *       *       *       *

(c) *Life estates and terms for years.* If the interest to be valued is the right of a person for his or her life, or for the life of another person, to receive the income of certain property or to use non-income-producing property, the value of the interest is the value of the property multiplied by the figure in column 3 of Table A opposite the number of years nearest to the actual age of the measuring life. If the interest to be valued is the right to receive income of property or to use non-income-producing property for a term of years, column 3 of Table B is used. The application of this paragraph (c) may be illustrated by the following example:

*       *       *       *       *       *       *

(d) *Remainders or reversionary interests.* If the interest to be valued is a remainder or reversionary interest subject to a life estate, the value of the interest should be obtained by multiplying the value of the property at the date of the gift by the figure in column 4 of Table A opposite the number of years nearest the age of the life tenant. If the remainder or reversion is to take effect at the end of a term for years, column 4 of Table B should be used. * * *

## Table B of section 25.2512-5(f), Gift Tax Regs., assumes a 10-percent rate of return.

Initially, we disagree with respondent's position that our decision is controlled exclusively by sections 25.2511-1(e) and 25.2512-5(a)(1)(i), Gift Tax Regs. Section 25.2511-1(e) is directed toward situations where the gifts are subject to conditions which are not susceptible of valuation, such as

---

[2]The balance of this paragraph is directed to specifying other sections of the regulations which govern particular types of gifts, not including the type involved herein.

death without issue, and not to situations where the gifts are unconditional but the underlying facts may cause the gift to be difficult to value. Similarly, the first sentence of section 25.2512-5(a) makes it clear that fair market value is, unless it falls within the exceptions provided in subparagraph (1)(i), see *supra* note 2, to be determined "under this section" which clearly includes paragraphs (c) and (d) and the use of table B. In light of the foregoing, we must look elsewhere if we are to sustain respondent's position that table B should not be used.

We recognize that in several situations we have articulated the principle that the method prescribed in the regulations must be followed, " 'unless it is shown that the result is so unrealistic and unreasonable that either some modification in the prescribed method should be made * * * or complete departure from the method should be taken, and a more reasonable and realistic means of determining value is available.' " *Vernon v. Commissioner*, 66 T.C. 484, 489 (1976); *Weller v. Commissioner*, 38 T.C. 790, 803 (1962).

Respondent argues that this exception applies herein because, realistically, the facts show that, from the inception of the trusts, it was intended that only a de minimis amount of income was contemplated and that, by virtue of the authorization given to the trustees to retain the O'Reilly stock, petitioners waived the right to obtain meaningful income from the trusts. In support of his position, respondent relies heavily on *Rosen v. Commissioner*, 48 T.C. 834 (1967), revd. 397 F.2d 245 (4th Cir. 1968). In *Rosen*, we held that, in determining whether the taxpayers were entitled to an annual exclusion under section 2503(b)[3] for the income interest in stock of a corporation controlled by the donors which had never paid a dividend and where the trustees had the power to retain the nonincome-producing property or to sell and reinvest in income or other nonincome-producing assets, the taxpayers could not use the actuarial tables to determine the value of the income interest, because such reliance would produce a

---

[3]All statutory references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

clearly erroneous result. Our decision in *Rosen* was reversed by the Court of Appeals for the Fourth Circuit.

Respondent also relies on other cases reaching the same conclusion as this Court reached in *Rosen,* to wit, *Stark v. United States,* 477 F.2d 131 (8th Cir. 1973), affg. per curiam 345 F. Supp. 1263 (W.D. Mo. 1972); *Calder v. Commissioner,* 85 T.C. 713 (1985); and *Berzon v. Commissioner,* 63 T.C. 601 (1975), affd. 534 F.2d 528 (2d Cir. 1976), wherein we reaffirmed our adherence to our holding in *Rosen* despite its reversal.[4] See also *Maryland Nat. Bank v. United States,* 609 F.2d 1078 (4th Cir. 1979), in which the Court of Appeals for the Fourth Circuit narrowed the scope of its opinion in *Rosen.* We think that these cases are distinguishable and therefore not controlling herein.

Initially, we observe that our analysis is based on our conclusion that, at all times herein, petitioners and the trustee intended that, at least during the term in which the income was reserved to the donors, the O'Reilly stock would not be sold and the proceeds invested in higher income-producing assets. Cf. *Berzon v. Commissioner,* 63 T.C. at 617. In this context, we find it unnecessary to deal with respondent's dissection of the powers and duties of the trustee under the trust instruments and the applicable Missouri law.

As a further threshold matter, we recognize that the O'Reilly stock, historically and currently at the time of the gift, produced some income, albeit small (2/10 of 1 percent) as compared with 10 percent incorporated into table B, and that the dividend in fact increased in the years immediately after the gifts, although admittedly remaining very small. By way of contrast, the cases upon which respondent relies, see *supra* pp. 651-652, all involved property which historically and currently at the time of the gifts produced no income, although we do not suggest that this is a sufficient basis for distinguishing those cases and reaching a decision for petitioners herein. Indeed, if we were to rest our decision on such a narrow foundation, we would be opening up Pandora's box in that we could have to decide, in every case, where the line should be drawn in terms of the

---

[4]Compare *Swetland v. Commissioner,* T.C. Memo. 1978-47.

dividend potential of stock for the purpose of determining whether the actuarial tables should be used.

We do think it appropriate to note, however, that even a casual perusal of the New York Stock Exchange quotations in the Wall Street Journal reveals that there are a substantial number of publicly held corporations whose dividends represent less than a 1-percent yield. Finally, we note that, as respondent admits, the 10-percent rate incorporated into table B is based on the market rate of return on fixed obligations; the same is true of the yield on passbook savings, certificates of deposit, and on U.S. Treasury Bills (see *supra* p. 650). It goes without saying that common stock does not fall within the category of "fixed obligations" so that a comparison of yield on these two types of securities is like mixing apples and pears.

In *Rosen, Stark, Calder,* and *Berzon,* the donor had transferred his entire interest in the property and the question was whether the income interest was a present or future interest for the purposes of the exclusion provided by section 2503(b). In this context, the articulated standard for decision was whether an economic benefit was conferred upon the income beneficiary, see *Calder v. Commissioner,* 85 T.C. at 727-728,[5] rather than determining whether an interest was transferred and simply valuing that interest. Yet, the question of what interests were transferred and their value is precisely the question which is involved herein. Even if we accept respondent's position, it does not follow that petitioners herein transferred their entire interest in the O'Reilly shares. In point of fact, the remaindermen were not entitled to any benefits until the expiration of the income term. Under these circumstances, we find it difficult to conclude, as respondent would have us do, that the value of the income interest should be allocated to the remainder interest so as to make the entire value of the shares subject to the gift tax. The anomalous nature of respondent's position is clearly revealed if we examine the situation which would exist if the income interest had been given to petitioners' children with petitioners retaining a

---

[5] A similar standard has been utilized for the purpose of determining the use of actuarial tables in measuring the amount of a charitable deduction. See, e.g., *Seder v. Commissioner,* 60 T.C. 49 (1973).

reversion. Under the rationale advocated by respondent, the income interests would have no value, the reversion would encompass the full value of the shares, and there would be no gift. Surely, this result would not be consistent with the statute or the regulations. See sec. 25.2512-5(d), Gift Tax Regs., *supra* p. 650. Indeed, respondent rejected such a result in a situation substantially identical to that involved herein. See Rev. Rul. 79-280, 1979-2 C.B. 340 (wherein respondent adopted the same distinction we have made in respect of the issue of the exclusion provided by section 2503(b)). We are not prepared to adopt a rationale in this case which could produce a situation where respondent might seek to pursue a "heads I win, tails you lose" approach in terms of the applicability of the actuarial tables.

We are reinforced in our analysis by the cases in which taxpayers unsuccessfully sought to avoid the use of the actuarial tables with evidence that the property in question produced and was expected to produce a substantially different rate from that incorporated into the actuarial tables. E.g., *Bowden v. Commissioner,* 234 F.2d 937 (5th Cir. 1956), affg. a Memorandum Opinion of this Court; *Vernon v. Commissioner, supra; Estate of Green v. Commissioner,* 22 T.C. 728 (1954). Compare *Hipp v. United States,* 215 F. Supp. 222 (W.D.S.C. 1962), and *Weller v. Commissioner, supra,* where respondent unsuccessfully sought to avoid the use of the tables.

We conclude that, under the circumstances herein, the proper focus is on "the interest transferred" by petitioners to which the gift tax is applicable under section 25.2511-1(e), Gift Tax Regs., *supra* pp. 649-650, and not on the value of the retained interest as indicated in section 25.2512-5(a), Gift Tax Regs., *supra* p. 650. The structure of the regulations is such that the latter provision deals with the method of valuation *after* a determination is made under the former provision, as to the interest transferred. In this context, the transfers should be treated as what they really were, namely, gifts of future interests in an amount equal to the discounted fair market value of the stock, determined under table B, in accordance with the mandate of section 25.2512-5(d), Gift Tax Regs. Logically, that process should

involve utilizing column 4 of table B without regard to the value of the retained interest. However, we note that the same result obtains if the fair market value of the O'Reilly stock is reduced by the value of the retained income interests as set forth in column 3 of table B. Compare *Vernon v. Commissioner, supra,* with *Weller v. Commissioner, supra.*

Our approach also will facilitate the valuation of gifts where an income interest is transferred to a third party and the donor reserves a reversionary interest which would be valued in accordance with the mandate of section 25.2512-5(c), Gift Tax Regs. In such a case, it will also be immaterial whether the income interest is valued by reference to column 3 of table B or by subtracting the value of the reversionary interest determined by reference to column 4.

Our approach produces a realistic result and takes into account "the interest of a simplified overall administration of the tax laws" (*McMurtry v. Commissioner,* 203 F.2d 659, 666 (1st Cir. 1953)), where the Court of Appeals, although vacating and remanding this Court's decision (16 T.C. 168 (1951)) in other respects, affirmed our rejection of the taxpayer's attempt to avoid use of the actuarial tables) and the importance of neutrality in permitting either the taxpayer or respondent to avoid the use of the actuarial tables (see *Rosen v. Commissioner,* 397 F.2d at 248).

*Decisions will be entered for the petitioners.*