CHARLES T. FROH, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 23022–90.          Filed January 7, 1993.

*Jennifer Miller Moss,* for petitioner.
*Kathryn K. Vetter,* for respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency
of $175,658 in petitioner's gift tax for 1985. By amendment
to answer, respondent asserted an increased deficiency of
$483,418. The sole issue herein is the proper method for
determining the value of the income interests in three short-
term trusts established by petitioner.

1

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference.

Petitioner maintained his legal residence in Grimes, California, at the time he filed the petition. He filed a timely gift tax return for 1985 with the Internal Revenue Service at Ogden, Utah.

Petitioner owned real property in respect of which he had leased the mineral interest to Texas Oil & Gas Corp., which in turn sold gas derived therefrom to Pacific Gas & Electric Co. The contract for the sale of gas provided that Pacific Gas & Electric Co. could satisfy its obligation to purchase the gas produced by taking or paying for one-third thereof. Gas began to be produced in November 1984.

On May 21, 1985, petitioner deeded the mineral interest to three trusts for the benefit of his two children and one grandchild. The term of each trust was for 10 years and 1 month. Each trust provided that the net income should be paid to the person for whose benefit the trust was established and that, upon the expiration of the term, the trust was to terminate and principal was to be paid to petitioner or as he appointed by his will or, in default of such appointment, to his estate.

Each trust instrument authorized the trustee, in his discretion, to retain or dispose of, and to invest and reinvest in, any property. Each instrument also authorized the trustee to allocate receipts, expenses, and other charges in accordance with the provisions of the California Revised Uniform Principal and Income Act or, if a matter was not provided for by that Act, as the trustee in his discretion determined. The foregoing power of allocation expressly was made subject to the following: "a reserve for the depletion of all depletable resources shall be set aside annually, or at more frequent intervals, during the term of the trust in the amount of the depletion deduction allowable for each tax year under the provisions of sections 611 through 613A of the Internal Revenue Code,[1] as from time to time amended, or any successor sections thereto and * * * shall be credited to

---

[1] All statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

principal". Thus net income was to be determined after such charge, which amounted to 15 percent.

Each party's expert calculated the fair market value of the transferred property using a market discount applied to projected net revenues, petitioner's expert determining a value of $1,364,595 and respondent's expert determining a value of $1,978,782. In the stipulation of facts, submitted at the opening of the trial, the parties agreed that the fair market value was $1,500,000.

OPINION

Petitioner contends that the proper method of calculating the fair market value of the income interests in the trusts is to accept the proposition that only 85 percent of the $1,500,000 should be allocated to them because 15 percent of the value is attributed to the portion of the income directed to be set aside as depletion and treated as principal. To that 85 percent of value ($1,275,000), petitioner then applies a factor of .614457 representing the present value of $1 of income for a term of 10 years. See sec. 25.2512-5(f), Table B, Gift Tax Regs. Respondent's primary position is an acceptance of petitioner's 15-percent reduction in value but a rejection of any further reduction through the application of the percentage factor from table B on the ground that, under the circumstances herein, the property was a wasting asset which would be exhausted at or prior to the expiration of the income term. As an alternative position, respondent contends that, if we conclude that the percentage factor can be utilized, then it should apply to the fair market value unreduced by the 15 percent. For the reasons hereinafter set forth, we agree with respondent's primary position.

Initially, we observe that the transferred property is a wasting asset. Such being the case, the instant situation differs from that of the cases, involving nonwasting assets, in which the courts have been called upon to decide whether the actuarial tables should be utilized. This Court and the Court of Appeals for the Eighth Circuit have recently had occasion to review those cases in *O'Reilly v. Commissioner,* 95 T.C. 646 (1990), revd. and remanded 973 F.2d 1403 (8th Cir. 1992), and we see no purpose to be served in dissecting them again. Suffice it to say that the decided cases, including our

disposition and that of the Eighth Circuit of *O'Reilly,* applied the same standard, namely, that the use of the actuarial tables is presumptively correct unless it is shown that such use is "unrealistic and unreasonable." See *id.* 95 T.C. at 651 and 973 F.2d at 1407-1408; see also *Weller v. Commissioner,* 38 T.C. 790, 803 (1962). At this point, we think it appropriate to observe that, in the foregoing context, the precedential value of the Eighth Circuit's disposition of *O'Reilly* appears confined to its factual frame of reference.

Both petitioner's and respondent's experts projected anticipated royalties, as a basis for arriving at their determinations of fair market value. Petitioner's expert used a 6-year projection, and respondent's expert used a 10-year projection in their respective reports. Thus, both projections rested on their belief that the income stream would be exhausted or reduced to a de minimis level at or prior to the expiration of the term interests.[2] Indeed, petitioner's expert testified that the reason he did not extend his projection beyond 6 years was because by that time "the value had dropped down to a number that was not worth continuing with". On the basis of the foregoing, we see no escape from the conclusion that the use of the percentage factor in table B in valuing such interests would be "unrealistic and unreasonable".

Petitioner attempts to counter the logic of this conclusion by pointing to testimony of his expert that, in the discussions with respondent's expert which resulted in an agreement on the fair market value of the gifted property, a longer span for the receipt of royalties was considered and that he did a computer run based on such longer span. Leaving aside the fact that respondent's expert indicated in his testimony that no projection longer than 10 years was considered at any time,

---

[2] The revenue projections (before application of discount) are as follows:

| Year | Petitioner's expert | Respondent's expert |
|------|---------------------|---------------------|
| 1985 | $770,385 | $1,190,125 |
| 1986 | 472,500 | 795,167 |
| 1987 | 245,000 | 329,724 |
| 1988 | 157,500 | 156,240 |
| 1989 | 131,600 | 81,657 |
| 1990 | 105,000 | 46,005 |
| 1991 | - - - | 27,506 |
| 1992 | - - - | 17,257 |
| 1993 | - - - | 11,269 |
| 1994 | - - - | 7,609 |
| | 1,881,985 | 2,662,559 |

the testimony of petitioner's expert is without corroboration; one would have thought that the computer run or some other supporting evidence might have been submitted. Similarly, the possibility that the trustee might have sold the gifted property and invested the proceeds in more traditional income-producing assets is not sufficient to support the conclusion that the use of table B would be appropriate, particularly where there is no evidence that the trustee intended to accomplish such a conversion. See *Calder v. Commissioner,* 85 T.C. 713, 729-730 (1985); cf. *Berzon v. Commissioner,* 63 T.C. 601, 617-618 (1975), affd. 534 F.2d 528 (2d Cir. 1976). The same view applies to the generalized references as to the possible effect of a compressor on the production flow, the exact impact of which is, in any event, far from clear. Finally, petitioner's attempt to sustain his contention by pointing to the fact that the 15 percent of income allocated to principal would (and in fact did to a small degree) produce income is without merit. Here again, assuming without deciding that this element would have a meaningful effect on the value of the term interests, the record herein is devoid of evidence that would permit its quantification prospectively at the time of the gifts.

In sum, we conclude that, given the particular circumstances of this case where the projected income stream from a wasting asset is expected to be exhausted or reach a de minimis level prior to the expiration of the income term being valued and taking into account a set-aside to principal of a portion of income in order to account for the wasting nature of the asset, it would be "unrealistic and unreasonable" to use the percentage factor of table B of section 25.2512-5(f), Gift Tax Regs., to value the amount of the gifts of the term interests involved herein. Under these circumstances, we need not address respondent's alternative contention that, if table B is utilized, the amount of the gift should not be further reduced by 15 percent, representing the value of the set-aside to principal.

In order to take into account the impact of the stipulated fair market value of the gifted property,

*Decision will be entered under Rule 155.*