CHARLES H. O'REILLY, SR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ALMA M. O'REILLY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Reilly v. Commissioner
Docket Nos. 16353-89, 16354-89
United States Tax Court
T.C. Memo 1994-61; 1994 Tax Ct. Memo LEXIS 62; 67 T.C.M. (CCH) 2176; February 17, 1994, Filed *62 Decisions will be entered under Rule 155. For petitioners: James F. McLeod and Vincent Tyndall. For respondent: Michael L. Boman. TANNENWALD
TANNENWALD
SUPPLEMENTAL MEMORANDUM OPINION TANNENWALD, Judge: [1] These cases are before the Court on remand from the Court of Appeals for the Eighth Circuit in O'Reilly v. Commissioner, 973 F.2d 1403 (8th Cir. 1992), revg. 95 T.C. 646 (1990). The sole issue for decision is the value of gifts of remainder interests in trusts of common stock of O'Reilly Automotive, Inc. (O'Reilly). We see no purpose in repeating the findings of fact which formed the basis of our prior action and that of the Court of Appeals. They are set forth in our prior opinion and are incorporated herein *63 by this reference. Further underlying facts have been stipulated. [2]
On May 2, 1985, petitioner Charles O'Reilly transferred 13 shares of common stock of O'Reilly to his Trust 1 for a term of 3 years and 7 shares of common stock of O'Reilly to his Trust 2 for a term of 4 years. On May 2, 1985, petitioner Alma O'Reilly transferred 5 shares of common stock of O'Reilly to her Trust 1 for a term of 2 years, 9 shares of common stock of O'Reilly to her Trust 2 for a term of 3 years, and 6 shares of common stock of O'Reilly to her Trust 3 for a term of 4 years. Under the terms of the trust agreements, petitioners retained the income interests and gifts were made of the remainder interests to petitioners' children. *64 Each trust would terminate at the sooner of the end of the prescribed period of years or at the death of the grantor. Charles O'Reilly and Alma O'Reilly were 72 and 69 years of age, respectively, at the time the trusts were created. Each trust could also be terminated by the trustee prior to the expiration of the trust term, in which event a formula was provided for determining the amounts to be paid for the income interests. It was understood that the trustees would not dispose of the O'Reilly stock in favor of other investments and the trustees retained the stock until the end of the trust terms. The parties have stipulated that each share of the common stock of O'Reilly had a fair market value of $ 9,639 on May 2, 1985. O'Reilly is a closely held corporation with all of the stock held either directly or indirectly by the O'Reilly family. On May 2, 1985, there were 651 shares of common stock outstanding. On July 25, 1985, O'Reilly had a 100-for-1 stock split. O'Reilly is in the automotive retail business selling parts, tools, equipment, supplies, and accessories. It was founded in 1957 and has experienced substantial growth from operating 1 store in 1957 to 127 stores *65 by the end of 1992. At the time of the gifts, O'Reilly had expanded its operation to 67 stores. O'Reilly has historically paid a nominal cash dividend on its stock, and the parties have stipulated that, as of May 2, 1985, it had no plans to change its historical practice. The dividends paid by O'Reilly are reflected in the following table: Shares
Dividends
Total
Year
Outstanding
Per Share
Dividends
1980
860.5
$ 12.00
$ 10,326.00
1981
858
13.00
11,154.00
1982
701
13.00
9,113.00
1983
657
13.00
8,541.00
1984
651
13.00
8,463.00
1985
62,500
.13
8,125.00
1986
60,200
.13
7,826.00
1987
60,274
.15
9,041.10
1988
60,170
.16
9,627.20
1989
60,792
.18
10,942.56
The following table reflects the net after-tax profit of O'Reilly: Year
Net After-Tax Profit
1980
$ 728,709.87  1981
590,560.51
1982
989,524.00
1983
672,187.00
1984
1,315,283.00
1985
1,551,599.00
1986
1,494,484.00
1987
1,368,000.00
1988
2,541,000.00
1989
2,089,000.00
1990
3,006,000.00
1991
5,382,000.00
1992
6,361,000.00
The following table shows the retained earnings, percentage increase in retained earnings, shareholder equity (total capital and retained earnings, *66 including those of two subsidiaries), and percentage increase in shareholder equity: Year
Retained Earnings
Increase
Shareholder Equity
Increase
1981
$ 4,573,724.62 --  $ 4,607,074.62 --  1982
5,518,142.69
20.6%
5,551,242.69
20.5%
1983
6,140,414.12
11.3%
6,173,264.12
11.2%
1984
7,390,527.92
20.6%
7,423,077.92
20.2%
1985
8,648,237.95
17.0%
8,679,487.95
16.9%
1986
8,916,317.00
3.1%
8,946,317.00
3.1%
1987
9,943,000.00
11.5%
10,023,000.00
12.0%
1988
12,699,000.00
27.8%
12,779,000.00
27.5%
1989
14,852,000.00
17.0%
15,077,000.00
18.0%
1990
17,917,000.00
20.6%
18,169,000.00
20.5%
1991
22,712,000.00
26.8%
22,881,000.00
25.9%
1992
29,051,000.00
28.0%
29,281,000.00
28.0%
In our prior opinion, we agreed with petitioners and held that the remainder interests should be valued by using Table B in accordance with section 25.2512-5(d), Gift Tax Regs. (Table B). O'Reilly v. Commissioner, 95 T.C. at 654. We rejected respondent's contention that, under section 25.2511-1(e), Gift Tax Regs., the gift tax applies to the entire value of the stock transferred because the retained interests were not susceptible *67 of measurement under generally accepted valuation principles. O'Reilly v. Commissioner, 95 T.C. at 650. Respondent's position was based primarily on the fact that because of O'Reilly's dividend-paying history, there would be virtually no income inuring to the benefit of the income interests. Respondent argued that, under these circumstances, the method prescribed in Table B of section 25.2512-5(f), Gift Tax Regs., should not be followed because the tables produced an unreasonable and unrealistic result. We rejected respondent's contention and sustained petitioners' valuation of the income and remainder interests based on the use of Table B as follows: Income Interest Remainder Interest
Charles O'Reilly
Trust 1 $ 31,162
$ 94,145
Trust 2 21,388
46,085
Alma O'Reilly
Trust 1 8,364
39,831
Trust 2 21,574
65,177
Trust 3 18,333
39,501
The Court of Appeals concluded that Table B should not be used because the result of such use was unrealistic and unreasonable. O'Reilly v. Commissioner, 973 F.2d at 1408. The Court of Appeals also rejected respondent's position that, pursuant to section 25.2511-1(e), *68 Gift Tax Regs., the gift tax is applicable to the entire value of the stock transferred because the retained income interests were not susceptible of measurement on the basis of generally accepted valuation principles. The Court of Appeals concluded that, because O'Reilly consistently paid dividends for years prior to the gifts, albeit small in amount, the only valuation variable at the time of the gifts was whether O'Reilly could be expected to pay dividends in the future, a variable which the Court of Appeals believed valuation experts could predict. Accordingly, the Court of Appeals held that respondent's zero valuation for the income interests was in violation of the statute and the regulations under section 25.2511-1(e), Gift Tax Regs., [3] and that the presumption of correctness of respondent's determination disappeared. O'Reilly v. Commissioner, 973 F.2d at 1407. As a result, the Court of Appeals held that petitioners were not required to establish the correct amount of tax and that this was "the court's function. Therefore, the case must be remanded to the Tax Court for redetermination of the value of the gifts. * * * Use of the tables produces *69 a totally unreasonable result and the income and remainder interests in O'Reilly * * * stock are capable of more accurate valuation." Id. at 1409. Before proceeding to perform the task which has thus devolved upon us, some preliminary comments are in order. We deal first with petitioners' contention that the Court of Appeals shifted the burden of proof to respondent. We disagree. The question of the consequence of a holding that respondent's determination of a zero value for the income interests herein was "unrealistic and unreasonable", 973 F.2d at 1407 *70 (and therefore can be characterized as "arbitrary"), has been the subject of judicial discussion over the years stemming from the Supreme Court's opinion in Helvering v. Taylor, 293 U.S. 507 (1935). Some courts have decreed that such a holding does no more than shift to respondent the burden of coming forward with some evidence to support respondent's position; other courts have gone further and shifted the burden of proof although this has for the most part occurred in cases involving unreported income and not deductions. See United States v. Janis, 428 U.S. 433, 441-442 (1976); Anastasato v. Commissioner, 794 F.2d 884 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101; United Aniline Co. v. Commissioner, 316 F.2d 701, 704 (1st Cir. 1963), affg. T.C. Memo. 1962-60; Llorente v. Commissioner, 74 T.C. 260, 272-280 (1980) (Tannenwald, J., concurring). This Court has consistently made it clear that, even in cases involving unreported income, we will only shift to respondent *71 the burden of coming forward with evidence and not the burden of proof. See Kluger v. Commissioner, 83 T.C. 309, 310 n.1 (1984); Federal Natl. Bank v. Commissioner, 16 T.C. 54, 63-64 (1951); Junghans & Becker, Federal Tax Litigation, sec. 12.01(1) (2d ed. 1993). In our opinion, the Court of Appeals in O'Reilly has followed the same path in that it has decreed that respondent must come forward with some evidence to support her position in order to enable this Court to reach a decision and is not required to carry the ultimate burden of persuasion. In any event, as we have previously pointed out, whether the burden of proof has been shifted to respondent becomes significant only when the mind of the trier of the facts is in equilibrium. See Llorente v. Commission, supra at 273 n.2 (Tannenwald, J., concurring). As will subsequently appear, we do not find ourselves in such a position herein. We turn next to the dispute between the parties as to whether the proper procedure is simply to value the remainder interests directly, as petitioners have done, or the income interests and then *72 subtract the value of these interests in order to arrive at the value of the remainder interests, as respondent has done. Petitioners contend that the rejection by the Court of Appeals of the use of Table B represents a rejection of section 25.2512-5, Gift Tax Regs., in its entirety, including the provision of paragraph (a)(1)(i) that "Where the donor transfers property in trust or otherwise and retains an interest therein, the value of the gift is the value of the property transferred less the value of the donor's retained interest". As a consequence, petitioners contend that, since the gifted property is the remainder interests, they should be valued directly pursuant to section 25.2512-1, Gift Tax Regs., which provides that such value should be "the price at which such property [the remainder interests] would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts". Respondent contends that the Court of Appeals rejected only the use of the actuarial tables and that we should apply the procedure in section 25.2512-5(a)(1)(i), Gift Tax Regs., which reads as follows: *73 Where the donor transfers property in trust or otherwise and retains an interest therein, the value of the gift is the value of the property transferred less the value of the donor's retained interest. * * * The focus of the Court of Appeals' opinion was on the valuations of the parties. It was only because it found that both valuations were "unrealistic and unreasonable" that it concluded that petitioners should not be permitted to use Table B and respondent should not be able to apply section 25.2511-1(e), Gift Tax Regs., supra note 3. In our view, when the Court of Appeals stated that "the income and remainder interests in O'Reilly * * * stock are capable of more accurate valuation", 973 F.2d at 1409, it did not mandate that we choose between valuing the remainder interests as against the income interests or vice versa. It simply gave us the task of allocating, as best we could, the $ 9,639 stipulated fair market value of the O'Reilly stock between the portion of that amount which reflects the income-producing prospects of the stock by way of dividends and the portion of that amount which reflects the anticipated appreciation in that *74 value between May 2, 1985, and the specified dates of termination of the trusts. Valuing either the income interest or the remainder interest will necessarily produce the required allocation. Cf. Vernon v. Commissioner, 66 T.C. 484, 490 (1976). The sum of the two allocations will equal the total value of the trusts based on the stipulated fair market value of $ 9,639 per share. In this connection and, under the circumstances herein, we reject petitioners' contention that this equivalent valuation is not essential and that the sum of the value of the income and remainder interests can be more or less than such fair market value. The authorities cited by petitioners to support this assertion involved situations where the direct ownership of the property was shared, such as a joint tenancy or community property, United States v. Rodgers, 461 U.S. 677 (1983); Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982), and discounts for minority stock interests, and personal holding company stock ownership, Pabst v. Commissioner, a Memorandum Opinion of this Court dated Oct. 31, 1947; Rev. Rul. 93-12, 1993-7 I.R.B. 13, *75 and are clearly distinguishable. Each party produced an expert with calculations in support of that party's methodology. We are satisfied that each expert was qualified and performed the task assigned to him. Neither we nor either of the parties have any credibility problem the resolution of which might influence our decision. The dispute herein involves the methodology utilized by the experts. Petitioners' expert valued the remainder interests directly and reached the same valuations reflected on petitioners' gift tax returns. He did so on the grounds that the potential for appreciation in the O'Reilly stock had already been taken into account and that his only task was to arrive at a permissible discount rate, which he concluded was 10 percent, based on his analysis of the money market at the time of the gifts. He then applied that discount rate to the $ 9,639 per share value of the O'Reilly stock in order to determine its value at the times of termination of the trusts. He did not take into account the possibility of earlier termination of the trusts, an element which petitioners suggest, on brief, would have had a negative impact on value but is an element which is generally *76 not quantifiable for valuation purposes. See Robinette v. Helvering, 318 U.S. 184, 189 (1943). Nor did he consider the impact of the possibility of the death of the grantor prior to the termination date, an element which is capable of actuarial calculation. Petitioners' expert admitted that he did not take into account the low dividend historically paid by O'Reilly, although the impact of this element and the effect of the potential increase in retained earnings on the expectation of appreciation in value is obvious. It is not without significance that petitioners' expert declined to offer any opinion as to the value of the income interests, even after it was pointed out to him that, if the calculation of respondent's expert of the value of those interests were added to the value of the remainder interests as calculated by him, there would be a gap of some $ 2,410 in accounting for the stipulated $ 9,639 per share fair market value. Since a 10-percent discount rate is built into Table B, petitioners' expert arrived at precisely the same value for the remainder interests as is obtained by utilizing Table B. Respondent has no quarrel, nor do we, *77 with the discount rate used by petitioners' expert. However, respondent disagrees, and so do we, with his premise, namely that the potential for appreciation between May 2, 1985, and the dates of terminations of the trusts can be ignored. The fact that potential appreciation was an element in calculating the stipulated fair market value of the O'Reilly stock does not mean that it should be ignored. That potential should be taken into account not for the purpose of increasing the stipulated fair market value of the O'Reilly stock, but rather for the purpose of determining how much of that value should be allocated to the remainder interests. Compare Froh v. Commissioner, 100 T.C. 1 (1993), where we looked to the future prospects for the principal of trusts, whose value at the time of the gifts was stipulated, in order to determine how much of that value should be allocated to the income interest. Indeed, a person who would pay $ 9,639 per share on May 2, 1985, would expect that value to increase in the future, just as a person who buys shares on the New York Stock Exchange which pay a small dividend and therefore are not being acquired for their income-producing *78 feature expects to obtain, as a result of future appreciation, an amount greater than the price paid. The value determined by petitioners' expert is the same as the value which the Court of Appeals held was "unreasonable and unrealistic" and which therefore caused it to disapprove petitioners' use of Table B. Petitioners' expert has sought to avoid this action by camouflaging what he did as being based, not on the application of Table B, but upon the discount rate prevalent in the market place on May 2, 1985. This he may not do. In light of the foregoing, we conclude that the valuations by petitioners' expert are fatally flawed and should be rejected. We now turn to the valuations arrived at by respondent's expert. He viewed his task as one to determine the value of the income interests and thus enable the Court, by subtraction, to arrive at the value of the gifted remainders. His analysis was founded upon O'Reilly's low dividend history. Thus, he concluded that "a hypothetical purchaser of the income interests would anticipate that future dividends would be in the range of those dividends paid during the period 1980-1984". He found corroboration for his approach in the range *79 of dividends actually paid during the period 1985-1989, cf. Berzon v. Commissioner, 63 T.C. 601, 617 (1975), affd. 534 F.2d 528 (2d Cir. 1976); Weller v. Commissioner, 38 T.C. 790, 803-804 (1962), and then gave petitioners the benefit of what he described as O'Reilly's "prior history of incremental dividend increases" by adopting "a valuation consistent with the 1985-1989 dividends actually paid". This approach is confirmed not only by the actual figures in respect of pre- and post-May 2, 1985, dividends but by the stipulation of the parties that "O'Reilly * * * has historically paid a nominal cash dividend on its stock. As of May 2, 1985, there were no plans to change its historical practice." [4] Respondent's expert then utilized the same 10-percent prevalent discount rate, as petitioners' expert used, to calculate the value as of May 2, 1985, of the anticipated dividend payments, also incorporating into his calculations the actuarial consequences of the possible death of each grantor during the terms of the trusts. *80 Based on the above factors, respondent's expert determined that the income interests of the trusts would change hands between a willing buyer and willing seller on the date of the gifts for a price of $ 756 as it pertains to Mr. O'Reilly and $ 699 as it pertains to Mrs. O'Reilly, and that, therefore, the value of the respective remainder interests were $ 192,024 and $ 192,081. Even though respondent's expert arrived at valuations which provide a very small reduction in the value of the remainder interests from the total fair market value of the stock transferred, we are satisfied that his valuations have sufficient validity to provide the basis for our decision herein. His valuation of the income interests conforms to the rejection of a zero value by the Court of Appeals and is based upon a projection of the likelihood of dividend payments by O'Reilly and of the resulting large value for the remainder interests stemming from the anticipated increase in retained earnings of O'Reilly. A comparison of the total value of $ 1,455 ($ 756 and $ 699) with the total of $ 1,773 in dividends actually paid during the trust terms supports those valuations and the consequent allocation of most *81 of the $ 9,639 fair market value as of May 2, 1985, to potential appreciation. This allocation finds further support in the history of retained earnings of O'Reilly prior to that date and the anticipation of further large increases in such earnings flowing therefrom (which in fact occurred) and their effect on such appreciation. We are not impressed with petitioners' attempt to undermine the use by respondent's expert of a 10-percent discount rate (the same rate as used by petitioners) by pointing to the dividend rates of publicly held companies. Those rates have wide variations, to say nothing of the fact that, as we pointed out in our earlier opinion (see O'Reilly v. Commissioner, 95 T.C. at 653), a number of publicly held corporations paid dividends representing less than a 1-percent yield just as O'Reilly did. Petitioners' reference to dividends paid by other corporations goes more to the question of whether the use of the dividend history of O'Reilly should have been modified to take the dividend record of those corporations into account -- a path we think at best a narrow one, in light of the past dividend history of O'Reilly as of May 2, 1985, *82 and the stipulation of the parties as to prospective dividend policy. Cf. Berzon v. Commissioner, 534 F.2d at 531-532. We conclude that the valuations of respondent's expert are sufficient to enable us to perform the function which the Court of Appeals directed us to perform on remand. Accordingly, we hold that the value of the gifted remainder interests were $ 192,024 in respect of the trusts established by Mr. O'Reilly and $ 192,081 in respect of the trusts established by Mrs. O'Reilly. Decisions will be entered under Rule 155, Tax Court Rules of Practice and Procedure. Footnotes
1. Upon remand, the cases were assigned to Special Trial Judge Marvin F. Peterson, who received the expert reports and heard their testimony and who has since retired. On Feb. 17, 1994, the cases were reassigned to Judge Theodore Tannenwald, Jr.↩
2. Petitioners object to those stipulated facts which set forth financial information for periods after May 2, 1985. We think such information is relevant at least by way of confirmation of the valuation of the income and remainder interests as of that date. Accordingly, petitioners' objection is overruled.↩
3. Sec. 25.2511-1(e), Gift Tax Regs., provides in pertinent part: If a donor transfers by gift less than his entire interest in property, the gift tax is applicable to the interest transferred. * * * However, if the donor's retained interest is not susceptible of measurement on the basis of generally accepted valuation principles, the gift tax is applicable to the entire value of the property subject to the gift. * * *↩
4. This approach finds further support in the fact that it was understood that the trustees would hold the O'Reilly stock and that they in fact did so until the end of the trust terms. See supra↩ p. 3.